**KURI BROTHERS, INC., Petitioner,**

v.

**DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent,**

and

**Archstone Smith Communities, LLC, Intervenor.**

No. 03–AA–1032.

District of Columbia Court of Appeals.

Argued Oct. 19, 2004.
Decided Feb. 2, 2006.

---

242

Tamir Damari, with whom Stanley H. Goldschmidt, Washington, DC, was on the brief, for petitioner.

Stacy L. Anderson, Assistant Attorney General, with whom Robert J. Spagnoletti, Attorney General for the District of Columbia, and Edward E. Schwab, Deputy Attorney General, were on the brief, for respondent.*

John Patrick Brown, Jr., and Stephanie A. Baldwin, submitted a statement in lieu of brief on behalf of intervenor.

Before RUIZ and GLICKMAN, Associate Judges, and TERRY, Senior Judge.**

GLICKMAN, Associate Judge:

This case is before us on the petition of Kuri Brothers, Inc., for review of a Board of Zoning Adjustment (BZA) decision affirming the revocation by the Department of Consumer and Regulatory Affairs (DCRA) of petitioner's Certificate of Occupancy (# B00181657) to use premises located at 4221 Connecticut Avenue, N.W., as an "Automobile Service Center." The BZA found that revocation was warranted because petitioner was operating an automobile repair garage, a use outside the scope of petitioner's Certificate of Occupancy (hereinafter, "C of O") and not permitted in its zoning district without a special exception. We affirm.

■ Preliminarily, because petitioner's counsel informed us at oral argument that the DCRA had issued a new, superseding C of O to petitioner for the premises in question, we directed the parties to submit supplemental briefs addressing whether the instant petition for review was moot. In their supplemental briefs, petitioner and respondent agree that the petition is not moot and that we should reach the legal questions presented. The new C of O (# CO33951), which merely reflected a change of property ownership, was issued six weeks before DCRA issued the Notice of Intent to Revoke its precursor, # B00181657. As a direct and immediate consequence of the subsequent revocation of # B00181657, DCRA declared C of O # CO33951 cancelled as well. In view of that cancellation, we accept the parties' position that the instant petition for review is not moot.

■ In asking us to reverse the BZA, petitioner claims that the revocation of C of O # B00181657 was procedurally flawed, not supported by substantial evidence in the record, and barred by laches. Our review of the BZA's determination is limited. We defer to the BZA's interpretation of the zoning regulations unless its interpretation is plainly wrong or inconsistent with the governing statute. See, e.g., Concerned Citizens of Brentwood v. District of Columbia Bd. of Zoning Adjustment, 634 A.2d 1234, 1242 (D.C.1993). We must affirm the BZA's factual findings so long as they are based on substantial evidence in the record. See, e.g., George Washington Univ. v. District of Columbia Bd. of Zoning Adjustment, 831 A.2d 921, 931 (D.C. 2003). Ultimately, we must sustain the

---

* At the time the briefs were filed, Ms. Anderson was called Assistant Corporation Counsel and Messrs. Spagnoletti and Schwab were called Corporation Counsel and Acting Deputy Corporation Counsel, respectively. Since that time, however, the Mayor of the District of Columbia has issued an executive order redesignating the Office of Corporation Counsel as the Office of the Attorney General for the District of Columbia. See Mayoral Order No. 2004–92, 51 D.C.Reg. 6052 (May 26, 2004) (citing D.C.Code § 1–204.22(2) & (11) (2001)). We employ the titles applicable at the time of this opinion's publication.

** Judge Terry was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on February 1, 2006.

BZA's action unless it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." D.C.Code § 2–510(a)(3)(A) (2001). However, "although we accord weight to the agency's construction of the statutes which it administers, the ultimate responsibility for deciding questions of law is assigned to this court." *George Washington Univ.*, 831 A.2d at 931 (internal citations omitted).

For the following reasons, we reject petitioner's claims.

1. *Denial of a Hearing before the DCRA Office of Adjudication.* DCRA's official Notice of Intent to Revoke C of O # B00181657 charged petitioner with operating an automobile repair garage in violation of both the C of O and applicable zoning regulations. The Notice advised petitioner that in order to challenge the proposed revocation, "you must request a hearing in writing within fifteen (15) days of your receipt of this Notice," and that "if you do not request a hearing within the time specified in this notice, ... you shall be deemed to have admitted the validity of the charges and specifications stated in this notice and a final notice of revocation will be entered against you." The Notice was served on petitioner on June 28, 2002, but petitioner failed to request a hearing until twenty-four days later, on July 22, 2002. The only explanation that petitioner offered for its untimely response was that "Koo Yuen, the real party in interest in this matter (the owner of the property) was out of the country and was not apprised of this matter until approximately

July 15, 2002." Chief Administrative Law Judge Little of the Office of Adjudication ("OAD") denied petitioner's request for a hearing as untimely. DCRA thereupon issued a final notice of revocation and subsequently directed petitioner and Mr. Yuen to discontinue all business activity at 4221 Connecticut Avenue, N.W.

■ Petitioner contends that the BZA erred in upholding DCRA's revocation of its C of O because petitioner was denied an evidentiary hearing before the DCRA. We do not agree, for petitioner was afforded due process and its rights were not violated. Neither the zoning statute nor the regulations governing C of O revocations expressly entitled petitioner to a hearing before the DCRA on the revocation of its C of O. Instead, the regulations seemingly contemplated summary revocation by the DCRA on ten days' notice with a right of appeal to (and a hearing before) the BZA. *See* 12A D.C.M.R. (former) §§ 118.4.6, 118.5.[1] Nonetheless, presumably to comply with the requirements of due process, DCRA offered petitioner the opportunity to request a hearing before the OAD at which DCRA would have borne the burden of proof.[2] In doing so, DCRA evidently (and not unreasonably) opted to follow the established procedure for adjudicating infraction notices under the Civil Infractions Act of 1985, *see* D.C.Code § 2–1802.01 *et seq.* (2001). The Civil Infractions Act procedure, which plainly satisfied the demands of due process, requires a respondent served with a notice of infraction to answer it within fifteen calendar days in

---

1. Subsequent to the BZA's decision in this case, the cited regulations were amended and renumbered as 12A D.C.M.R. §§ 110.5.6, 110.6. *See* 51 D.C.Reg. 368 (Jan. 9, 2004).

2. The Notice of Intent to Revoke cited former D.C.Code § 1–1509(a) (recodified without change as D.C.Code § 2–509(a) (2001)), which provides for hearings in "contested

cases," i.e., agency proceedings "in which the legal rights, duties, or privileges of specific parties are required by any law ..., or by constitutional right, to be determined after a hearing ...." D.C.Code § 2–502(8) (2001). Arguably, petitioner was entitled to a hearing on the revocation of its C of O as a matter of constitutional right.

order to contest it and request a hearing. *See* D.C.Code § 2–1802.01(b)(8), (9); § 2–1802.02(e). If, "without good cause," the respondent fails to answer within that time frame, it waives its right to contest the charge and "shall be liable" for the established penalty (a civil fine, under the Act). D.C.Code § 2–1802.02(f); *see also* D.C.Code § 2–509(a) (providing that "any contested case may be disposed of by ... default"). In the present case, petitioner ran afoul of these provisions: petitioner did not respond to the revocation notice in fifteen calendar days, and it did not show "good cause" for its failure to do so. Petitioner's justification, that Mr. Yuen was out of the country, simply did not explain why petitioner was unable to request a hearing in Mr. Yuen's absence (nor why Mr. Yuen's input was needed, why he was "the real party in interest" when he merely was petitioner's landlord, or why he could not be contacted more promptly).

■ 2. *Alleged Procedural Irregularities in the BZA Hearing.* Petitioner appealed the revocation of its C of O to the BZA. Over petitioner's objection, the BZA held a *de novo* evidentiary hearing (instead of restricting its review to the administrative record) and allocated the burden of proof to petitioner (instead of to DCRA). In light of petitioner's procedural default before the DCRA, neither ruling prejudiced petitioner. We therefore would not reverse even if we were to conclude that the BZA had erred. *LCP, Inc. v. District of Columbia Alcoholic Bev. Control Bd.,* 499 A.2d 897, 903 (D.C.1985) (under the prejudicial error rule, "reversal and remand is required only if substantial doubt exists whether the agency would have made the same ultimate finding with the error removed") (internal quotation marks and citations omitted). In fact, however, the challenged procedural rulings were not erroneous.

The BZA heard petitioner's appeal of the revocation of its C of O pursuant to its general review authority under D.C.Code § 6–641.07(f) (2001); *see also* 11 D.C.M.R. § 3200.2. Implementing that authority, 12A D.C.M.R. (former) § 118.5 expressly provided that "[a]ny person aggrieved by the action of the Director [of DCRA] granting, withholding, or revoking a Certificate of Occupancy may appeal the action to the Board of Zoning Adjustment, pursuant to D.C.Code Subsection 5–424(F) (1981) [which was recodified without change in 2001 as D.C.Code § 6–641.07(f)], and the District of Columbia Zoning Regulations." In "all appeals and applications" to the BZA, the Zoning Regulations provided for evidentiary hearings in which "the burden of proof shall rest with the appellant or applicant." 11 D.C.M.R. §§ 3117, 3119.

■ The DCRA's final notice of revocation specifically informed petitioner that the revocation of its C of O was appealable to the BZA pursuant to D.C.Code § 6–641.07(f). We reject petitioner's contention that the BZA nonetheless was required by D.C.Code § 6–641.09 and the Civil Infractions Act of 1985 to determine its appeal "on the basis of the record established before the administrative law judge or attorney examiner." D.C.Code § 2–1803.03 (2001). The Civil Infractions Act created an alternative civil fine system for infractions of D.C. law and amended D.C.Code § 6–641.09 to make this fine system available for zoning violations.[3] *See*

---

**3.** The Act added the following two sentences to § 6–641.09:

  Civil fines, penalties, and fees may be imposed as alternative sanctions for any in-

fraction of the provisions of this subchapter [D.C.Code Title 6, Chapter 6, subchapter 4, concerning zoning regulations], or any rules or regulations issued under the au-

D.C. Law 6–42, 32 D.C.Reg. 4450 *et seq.* (Aug. 2, 1985). But DCRA did not seek to impose a civil fine on petitioner in this case; rather, it sought the revocation of petitioner's C of O, a remedy that was not obtainable under the Civil Infractions Act. *See* D.C.Code §§ 2–1801.04, 1802.03 (2001). The appellate review procedures adopted in that Act solely for alternative civil fine proceedings therefore did not apply.[4]

3. *The BZA's Finding that Petitioner Operated a Repair Garage Outside the Scope of its Certificate of Occupancy.* Petitioner's property at 4221 Connecticut Avenue, N.W., is in an area zoned "C–3–A." Permissible uses as a matter of right in this zone include "automobile and truck sales" and "automobile accessories sales, including installations." 11 D.C.M.R. §§ 721.3(c), (d); 741.1. Operation of a "repair garage" is not permitted in a C–3–A zone, however, without a special exception (or a variance) from the BZA. 11 D.C.M.R. § 743.1. The zoning regulations define a "repair garage" as "a building or other structure, or part of a building or structure, with facilities for the repair of motor vehicles, including body and fender repair, painting, rebuilding, reconditioning, upholstering, equipping, or other motor vehicle maintenance or repair." *Id.* at § 199.1.

■ Petitioner was never granted a special exception or variance to operate a repair garage at 4221 Connecticut Avenue, nor did its C of O purport to authorize such a use. Petitioner's C of O, which it received in August 1998, was for an "automobile service center." Although the term "automobile service center" is not defined in the zoning regulations,[5] and its precise scope may be subject to some uncertainty, the BZA concluded that it was not intended and could not be construed to allow operation of a repair garage. This conclusion is supported, in our view, by substantial evidence in the record, including the documented history of the C of O. Petitioner concedes, as it must, that its C of O did not authorize it to have a repair garage.[6]

thority of these sections, pursuant to Chapter 18 of Title 2 [the Civil Infractions Act]. Adjudication of any infraction of this chapter shall be pursuant to Chapter 18 of Title 2.

The statutorily defined term "infraction" refers to violations for which a civil monetary sanction may be imposed under the Civil Infractions Act. *See* D.C.Code § 2–1801.02. Contrary to petitioner's contention, the second sentence added to § 6–641.09 does not mean that the Civil Infractions Act supplies the only mechanism for enforcing the zoning regulations; the section itself lists other enforcement mechanisms, such as an action in Superior Court.

4. DCRA cited D.C.Code § 6–641.09 in its final notice of revocation. Even if that arguably incorrect citation initially misled petitioner as to the scope of appellate review, the BZA cured the problem by clarifying the scope of review and granting petitioner additional time to prepare for a *de novo* proceeding.

Title 12A of the District of Columbia Municipal Regulations was amended in January of 2004 to provide that appeals of actions granting, withholding or revoking a certificate of occupancy now may be taken to the BZA pursuant to D.C.Code § 6–641.09. *See* 12A D.C.M.R. § 110.6. Inasmuch as this amendment occurred after the BZA decision in this case, it has no bearing on the issues before us.

5. Petitioner's C of O thus did not comply with the requirement that "[t]he use shall be designated on the certificate of occupancy in terms of a use classification that is established by this title [i.e., Title 11] ...." 11 D.C.M.R. § 3203.8(a). According to the Notice of Intent to Revoke the C of O, DCRA "created the category of 'Automobile Service Center' to facilitate" petitioner's declared intent "to sell small automotive parts and make installations of same." The Notice went on to state that "[t]his facilitation did not include or permit any major automotive engine, body work or other automotive garage functions." Petitioner did not contest these assertions.

6. If the C of O were construed to authorize such a use without the required special excep-

Thus, notwithstanding that the BZA did not undertake to delineate the precise scope of the C of O, the dispositive question before us is simply whether the BZA's further finding, that petitioner was operating a repair garage, was supported by substantial evidence of record.

■ DCRA inspectors testified that they saw automobile engine and other significant automotive repair work being done on petitioner's premises on multiple occasions. Their testimony was corroborated by photographs of petitioner's garage, copies of work orders, and petitioner's own business card, advertisements and signage offering a full range of auto repair services (e.g., "brakes," "exhaust," "alignment," "transmission," "electrical," "body work," "engine overhauls," "air conditioning/heating") and asserting that petitioner had 21 service bays, ASE certified technicians, and the capability to "service and repair all cars domestic & foreign." Petitioner presented no evidence to counter the showing that it was operating a repair garage within the meaning of the zoning regulations. We have no difficulty concluding that the BZA's finding was amply supported by substantial evidence in the record.[7]

4. *Laches.* Petitioner's final claim is that the BZA erred in rejecting its defense of laches. Petitioner asserts that the premises at 4221 Connecticut Avenue were in continual and uninterrupted use for certain automotive repair activities from 1940 until 1990, and that DCRA slept on its rights by not attempting to enforce the repair garage prohibition during that fifty-year period. We agree with the BZA that

petitioner's claim of unreasonable delay in enforcement is without merit.

■ "Laches is the principle that 'equity will not aid a plaintiff whose unexcused delay, if the suit were allowed, would be prejudicial to the defendant.'" *American Univ. Park Citizens Ass'n v. Burka,* 400 A.2d 737, 740 (D.C.1979) (quoting *Russell v. Todd,* 309 U.S. 280, 287, 60 S.Ct. 527, 84 L.Ed. 754 (1940)). The party asserting laches has the burden of establishing both that it was prejudiced by the delay and that the delay was unreasonable. *Sisson v. District of Columbia Bd. of Zoning Adjustment,* 805 A.2d 964, 972 (D.C. 2002). In the zoning context, the defense of laches is judicially disfavored because of the public interest in enforcement of the zoning laws. *Id.* at 971. Accordingly, "[l]aches is rarely applied in the zoning context except in the clearest and most compelling circumstances." *Id.* (internal quotation marks and citations omitted).

■ The circumstances necessary to support a laches defense are absent here. In particular, the record belies petitioner's claim that enforcement action was unreasonably delayed. Until 1990, there was no enforcement action to be taken because the property was occupied by a succession of automobile dealerships—a matter-of-right use—that were granted a limited variance by the BZA to perform repairs "incidental to the sale of new cars only." There is no indication that the automobile dealerships exceeded the allowed scope of the variance. However, after petitioner's predecessor-in-interest, Mr. Yuen, acquired the property in 1989, he stopped maintaining an automobile dealership on

---

tion, it would have been invalid and subject to revocation as having been issued in error. 12A D.C.M.R. (former) § 118.4.3.

**7.** Indeed, the one-sided nature of the evidentiary presentation is another reason why peti-

tioner cannot claim that it was prejudiced by the BZA's allocation of the burden of proof. The outcome of the proceeding would have been the same even if the BZA had allocated the burden of proof to DCRA and the intervenors.

the premises, and the variance for limited repair activities ancillary to new car sales was no longer available to him. DCRA then promptly enforced the prohibition on repair garages against Mr. Yuen via Notices of Infraction issued in April 1990 and March 1992. These enforcement actions were upheld by DCRA administrative judges and, in March of 1998, the BZA. Mr. Yuen did not appeal the BZA's decision, and he appeared to acquiesce in it. He applied the following month for a new C of O to use the property for "automobile sales and automobile accessory sales including installation"—both matter-of-right uses in a C–3–A zone. Thus, when petitioner obtained its C of O in August 1998, as Mr. Yuen's successor, DCRA had been enforcing the zoning regulations for almost a decade and petitioner could not reasonably have relied on DCRA's supposed acquiescence in the operation of a repair garage at 4221 Connecticut Avenue.

For the foregoing reasons, we hereby affirm the decision of the BZA to uphold revocation of petitioner's Certificate of Occupancy # B00181657.

*So ordered.*