Robert F. McCULLOCH,
et al., Appellants,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 95–CV–935.

District of Columbia Court of Appeals.

Argued Sept. 26, 1996.
Decided Nov. 14, 1996.

---

**400** ▪ ▬▬▬▬▬▬▬▬▬▬▬

---

Robert F. McCulloch, pro se.

Lutz Alexander Prager, Assistant Deputy Corporation Counsel, with whom Charles F.C. Ruff, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, Washington, DC, were on the brief, for appellee.

Before TERRY, STEADMAN and SCHWELB, Associate Judges.

SCHWELB, Associate Judge:

Appellants Robert and Maria McCulloch brought this action for negligence and breach of contract against the District of Columbia, claiming that the District failed to issue tax deeds to the McCullochs as required by law. They sought to recover, as damages, the fair market value of the properties in question. The trial court granted summary judgment in favor of the District and limited the McCullochs' recovery to a refund of their purchase money and the interest thereon. Concluding that the only remedies available to aggrieved tax sale purchasers are those specified in the tax sale statutes and that the legislature has not authorized the relief sought by the McCullochs, we affirm.

## I.

### THE TRIAL COURT PROCEEDINGS

The facts in this case, memorialized in the parties' amended joint pretrial statement, are substantially undisputed. The McCullochs successfully bid on and promptly paid for eleven properties during regularly scheduled real property tax sales in January 1989, July 1989, January 1990, and January 1991. The eleven properties had been the subject of tax sales that first occurred at least two years before the McCullochs' purchases. Because there were no bidders at the previous sales, however, the eleven properties had been "bid off" and purchased by the District. In the period between the bid off and the McCullochs' purchase, the original owners' statutory right to redeem their respective interests in the properties had expired.

After each of the tax sales, the McCullochs initiated correspondence with the Department of Finance and Revenue (DFR) and requested the immediate issuance of tax deeds for the eleven properties. The McCullochs based their claim of immediate entitlement on the Superior Court's unpublished decision in *Blacktree Farm, Inc. v. District of Columbia,* C.A. No. 2974–87 (Super.Ct.D.C. Sept. 22, 1987). In that case, the court held that the District was required to issue tax deeds immediately to tax sale purchasers who, like the McCullochs here, purchased properties which had been bid off to the District more than two years previously.

The McCullochs claim that during the months following each of the tax sales in question, they received assurances from DFR employees that DFR accepted and followed the *Blacktree Farm* interpretation of the tax sale statutes, and that DFR was "working on" the requested deeds. Nevertheless, the District did not issue tax deeds to the McCullochs. Instead, the District permitted seven of the properties to be redeemed by their original owners, cancelled two of the tax sales due to "administrative error," issued a deed to the tenth property to the District's homestead program, and conveyed the eleventh property to a purchaser who had acquired an interest in it at an earlier tax sale. As a result, the District is no longer able to issue tax deeds to the McCullochs for any of the eleven properties.

In January 1992, the DFR having failed to deliver the deeds, the McCullochs brought this action in the Superior Court seeking

damages against the District. The original owners were not joined as parties. The McCullochs alleged that the District's failure to issue the tax deeds constituted negligence and breach of contract,[1] and that they were entitled to recover from the District the fair market value of the properties that should have been conveyed to them.

The trial judge granted the District's motion for summary judgment "to the extent that plaintiffs claim damages arising out of the District's negligent failure to transfer the properties in suit," and he dismissed with prejudice "that portion of the complaint against the District."[2] The District conceded that the McCullochs were entitled to a refund of their purchase money, with interest, and the trial judge ordered relief consistent with that concession.

## II.

### LEGAL DISCUSSION

#### A. *The Tax Sale Statutes*

 The tax sale statutes, D.C.Code §§ 47–1301 *et seq.* (1990 and Supp.1996), permit the District to sell tax-delinquent properties at public auction. If the record owner has received notice, as prescribed in the statute, that a sale is pending, and if the taxes remain unpaid, then the Collector of Taxes may sell the property at auction for a sum that meets or exceeds the amount of taxes, penalties, and other charges due on the property. In the absence of a sufficient bid, the Collector of Taxes will "bid off" the property and purchase it on behalf of the District.

D.C.Code § 47–1303; 9 DCMR § 316.7 (1994).

 Neither the private purchaser nor the District may obtain immediate title to the property. Rather, a tax sale purchaser—private or public—acquires an inchoate interest in the property that will not ripen into title for two years following the tax sale. *District of Columbia v. Mayhew*, 601 A.2d 37, 40 (D.C.1991). In the interim, the record owner may redeem his interest by paying the aggregate amount of taxes, penalties, and costs due. D.C.Code § 47–1306.

Upon the expiration of the statutory two-year period, the record owner loses his right to redeem the property. If the purchaser is a private party, he may then apply to the DFR for a tax deed. If the District purchases the property, on the other hand, it may dispose of it by selling it at a public or private sale, or in one of several other ways.[3]

The McCullochs purchased the eleven properties at tax sales more than two years after the District had bid off those properties and purchased them for itself. They claim to have done so, consistent with *Blacktree Farm*, with the expectation that the District would issue tax deeds immediately following the sale. The District's failure to issue the deeds, according to the McCullochs, contravened the tax sale statutes and constituted negligence for which the District should be liable for damages.

The District defends the result below on two separate theories. First, it argues that

---

1. Although the McCullochs have cited no support for the proposition that a contract existed between the parties, there is some authority suggesting that a tax sale certificate constitutes a contract. *Craland v. State*, 214 Cal.App.3d 1400, 263 Cal.Rptr. 255, 258 (1989); *see also* 72 AM.JUR. 2d *State & Local Taxation* § 968 (1974) (the "inchoate rights acquired by the purchaser at a tax sale are contractual [in nature]....").

2. The trial judge's order did not address the McCullochs' claim of breach of contract. At oral argument, members of this court raised the question whether the June 28, 1995 order constituted a final, appealable judgment. Shortly after the argument, the McCullochs dismissed the breach of contract claim with prejudice, and we subsequently granted the parties' motion to supple-

ment the record to reflect that dismissal. There is thus nothing further left for the trial court to decide and, although the appeal was arguably premature when filed, we now have jurisdiction to entertain it. *See Carter v. Cathedral Ave. Co-op, Inc.*, 532 A.2d 681, 683 (D.C.1987); *Robinson v. Howard Univ.*, 455 A.2d 1363, 1365 n. 1 (D.C. 1983); *Dannenberg v. Software Toolworks, Inc.*, 16 F.3d 1073 (9th Cir.1994).

3. The District may also seek a court order enforcing the lien and decreeing that the property be sold, D.C.Code § 47–1312, or it may place the property in its homestead program, administered pursuant to D.C.Code §§ 45–2701 *et seq.* (1996). Alternatively, the Mayor may simply enforce the lien by ordering that a deed be issued to the District. D.C.Code § 47–847 (1990).

the McCullochs and the court in *Blacktree Farm* have misconstrued the tax sale statutes. According to the District, § 47–1304(a) contemplates a "public" sale of unredeemed and bid off properties, an event which is separate and apart from any of the regularly scheduled tax sales at which the McCullochs placed their bids. Second, the District claims that even assuming the correctness of the *Blacktree Farm* decision, the McCullochs were entitled only to a refund of their purchase money, together with the applicable statutory interest. We need not decide whether *Blacktree Farm* was correctly decided, for we agree with the District that even if it was, the McCullochs are not entitled to any relief beyond that granted to them by the trial court.[4]

## B. *The District's Liability*

In determining what rights, if any, a purchaser at a tax sale may have against a municipality where the transaction, or some part of it, has gone awry, we must first consider the somewhat esoteric character of the tax sale process. The District disposes of property at a tax sale simply to recover taxes due. The amounts in question are often relatively small. By offering properties for sale, the District is not entering the fray in order to invest public funds in a speculative venture, nor is it voluntarily taking substantial risks in the hope of reaping rich rewards.

The private purchaser's tax sale perspective is entirely different. As we explained in *Robinson v. District of Columbia*, 372 A.2d 1005 (D.C.1977),

> Economic risk—with the possibility of substantial gain or loss—is accepted and welcomed by those who bargain for tax liens. On the one hand, there is the possibility of gaining title to a valuable parcel for relatively small sums. But, on the other hand, changing circumstances can harm the lienholder's investment with no remedy against the taxing authorities.

*Id.* at 1008 (quoting *United States v. General Douglas MacArthur Senior Village, Inc.*, 366 F.Supp. 302, 306 (E.D.N.Y.1973), *aff'd,* 508 F.2d 377 (2d Cir.1974)).

■ The law may, and does, take into account the variant postures of the participants in this little melodrama. At common law, the tax sale purchaser bought "under the rule of *caveat emptor*" and "would get nothing unless he got the land itself." *Robinson,* 372 A.2d at 1008. The common law has now been modified by a detailed statutory and regulatory regime, and we have held that "in the absence of [applicable] statutory provisions, the tax certificate purchaser assumes the risks involved and has no remedy against the taxing authorities." *Id.* "Rights and liabilities under tax sale proceedings rest entirely upon the statutes involved." *Id.* (citations omitted); *see also Routh v. Quinn,* 20 Cal.2d 488, 127 P.2d 1, 2 (1942) ("in tax sales, the doctrine of *caveat emptor* applies in all its vigor").

The legislature did not contemplate the kind of relief against the District which the McCullochs have requested here. On the contrary, the tax sale statutes in this jurisdiction provide specific remedies for the tax sale purchaser who has bid on a property but who ultimately does not obtain title to it. Where the record owner redeems the property within the two-year period, the District must reimburse the tax sale purchaser, pursuant to § 47–1306, by refunding the purchase price together with interest. Similarly, when the Mayor discovers that a tax sale "was for any cause invalid and ineffectual to give title to the property sold," the District is required by § 47–1308 to return the purchase money and to pay interest. If a court sets aside a conveyance as invalid, then the "party in whose favor the decree is rendered shall pay to the party holding such conveyance ... the amount paid for such taxes and conveyances, together with interest." *Id.*

The existence of these limited statutory remedies cannot be reconciled with the notion that, on facts such as those revealed by this record, a qualitatively different and more extensive remedy is also authorized. *Cf.*

---

4. The District acknowledges that, even if we were to agree with its contention that *Blacktree Farm* was erroneously decided, such a determination would not dispose of the appeal with respect to two of the properties.

*Mack v. United States,* 637 A.2d 430, 433 (D.C.1994) ("Where, as here, the legislature has specified the relief which is appropriate to redress a violation, courts are not authorized to devise different (and in this case far more drastic) remedies; *expressio unius est exclusio alterius.*" (Footnote omitted)); 72 AM.JUR. 2d *State & Local Taxation* § 1036, at 307 (1974) ("[t]he fact that statutes have been adopted in [the District] providing for refund of moneys paid under invalid tax sales is itself a strong argument against the existence of any right to recovery in [the] absence of statute.").

■ The McCullochs contend, however, that we are dealing here not with a defect in the tax sale proceeding, to which the statutory remedies would apply, but rather, with negligence on the part of the District after that proceeding was over and after the redemption period had expired. All that remained to be done, according to the McCullochs, was for the District to carry out its statutory duty and to issue tax deeds in their favor. If the District had done what it was supposed to do, the appellants tell us, then the properties would be theirs. Accordingly, they contend, they are entitled to recover from the District the fair market value of the properties which the District wrongfully failed to convey to them.

The McCullochs' argument is not without some appeal, but we conclude that it cannot carry the day. This court had occasion to consider a similar set of facts in *Robinson.* In that case, Robinson purchased a tax certificate for a single family home in northeast Washington after the record owner had failed to pay the real estate taxes due. Relying on an oral extension granted by the DFR, the record owner attempted to redeem her property two weeks after the statutory two-year period had expired. Citing equitable considerations, the trial judge permitted the belated redemption and enjoined the District from issuing a tax deed to Robinson.

Robinson cross-claimed against the District, seeking as damages the fair market value of the property. He contended (as the McCullochs claim here) that his right to a tax deed had "vested indefeasibly" because the period during which the record owner had a statutory right to redeem had expired. 372 A.2d at 1007. This court, however, rejected Robinson's argument and held that, notwithstanding his claim of vesting, "the [only] relief available was or is repayment of the money he paid for the tax certificate on the property." *Id.* at 1009.

In denying Robinson's prayer for more extensive damages, the court explicitly stated in a footnote that "Robinson made no allegation of liability on the part of the City because of negligence." *Id.* n. 3. Seizing on that observation, the McCullochs point out that in this case they *have* alleged that the District was negligent. Accordingly, they insist, this court's decision in *Robinson* has no application. We cannot agree. Notwithstanding our recognition in the *Robinson* footnote that the plaintiff had not characterized his claim as sounding in negligence, we think that the central question in that case was whether a tax sale purchaser, even one whose claim to the property had "indefeasibly vested," was entitled to relief which was different in kind from that specifically authorized by statute. Having answered that question in the negative, we are not prepared to undermine the basic holding of *Robinson* because the McCullochs have attached a different label to what we perceive to be an essentially identical claim.[5]

To hold that the McCullochs are entitled to recover from the District the fair market value of the properties, when nothing in the statutory scheme relating to tax sales authorizes such relief, would potentially undermine the integrity of the tax sale process, for the District could become liable for amounts far greater than those that it has attempted to collect. As the Supreme Court of Pennsylvania has stated in a different but related

5. Although the McCullochs have denominated their claim as one of "negligence" (and, previously, breach of contract), they are really complaining of the District's failure to obey the commands of the statute which, they say, required the issuance of tax deeds to them. This was also the situation in *Robinson.* Nomenclature is not decisive; we look to the substance of the issue, not to its form. *Cf. EDM & Assocs., Inc. v. GEM Cellular,* 597 A.2d 384, 387–88 (D.C.1991) (citations omitted).

context, municipal exposure could "spread, pebble in a pond, until the governmental agency would be engulfed in a tidal wave of liability." *In re Upset Sale of Properties (Skibo)*, 522 Pa. 230, 560 A.2d 1388, 1389 (1989). The court concluded in *Skibo* that the tax sale purchaser, "however imposed upon by the clear negligence of the tax claim unit, [is] not entitled to more [than a refund with interest] under the clear intent of the legislature." *Id.* Although clarity of intent, like beauty, is often in the eye of the beholder, we are disposed to agree with the analysis in *Skibo*.

We note that our disposition of this case does not necessarily leave without a remedy those tax sale purchasers who present meritorious claims. If the McCullochs believe that some of the properties were redeemed by the original owners in violation of the McCullochs' rights, for example, they are free to put that view to the test by bringing an action against the original owners for ejectment or to quiet title. We express no opinion on the outcome of such hypothetical proceedings, but hold only that under circumstances such as those presented by this record, the sole remedy available against the District is the return of the McCullochs' payments, with interest.

### III.

### CONCLUSION

For the foregoing reasons, the judgment is

*Affirmed.*