James A. STUART, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 96–CV–479.

District of Columbia Court of Appeals.

Submitted April 10, 1997.
Decided April 16, 1997.*

James A. Stuart, pro se.

Lutz Alexander Prager, Assistant Deputy Corporation Counsel, with whom Charles F.C. Ruff, Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel, Appellate Division, were on the brief, for appellee.

Before FERREN, TERRY and REID, Associate Judges.

FERREN, Associate Judge:

James A. Stuart, a holder of tax sale certificates for five properties, had to surrender them because the properties were redeemed—three of them after the redemption period had expired—by the original property owners (or, in one case, by a lienholder). He challenges the rate of interest he was paid when he had to accept refunds for the two timely-redeemed properties. He claims the right to damages from the District, or rescission, with respect to the untimely redemptions, based on his contention that the properties should be deemed to belong to him as of the times the respective rights of redemption expired. The trial court rejected all of Stuart's arguments, as do we.

## I.

The trial court found[1] that Stuart purchased the five properties at issue from the

---

* The disposition in this case was issued as a Memorandum Opinion and Judgment on April 16, 1997, and is being published upon the court's grant of appellee's motion to publish.

1. Judge Weisberg held a one-day non-jury trial on February 20, 1996. Stuart has failed to arrange for us to receive a copy of the transcript. He therefore cannot challenge any of the trial

District at tax sales between July 1991 and August 1993. Two of these properties, which had been sold for unpaid water and sewer bills, were redeemed in a timely fashion in accordance with D.C.Code § 43–1529 (Supp. 1996) and D.C.Code § 47–1304 (1990 Repl. & Supp.1996) (the "timely redemptions"). The other three, sold for various reasons,[2] were redeemed after the statutory redemption periods had run (the "untimely redemptions").[3]

As to the timely redemptions, the District refunded Stuart's purchase money with interest computed at the statutory rate of 1% per month from date of tax sale purchase to date of refund, as provided by D.C.Code § 47–1304. Stuart, however, claimed that he was entitled to a return of 2%, not 1%, per month. Under D.C.Code § 43–1529, the District is entitled to charge delinquent property owners who have failed to pay water and sewer bills 2% per month interest as a penalty for the period between the tax sale and the redemption. Stuart argued that once the District sold the property, he, as purchaser, became entitled to all income generated by the property. This entitlement, he said, included any interest paid by the redeeming property owner greater than the 1% interest authorized by D.C.Code § 47–1304 for payment to the tax purchaser upon return of the money paid for the property at the tax sale.

As to the untimely redemptions, Stuart argued that the District had no right to allow the owners to redeem the properties after the statutory period had elapsed. Stuart therefore demanded either specific performance (i.e. that the court should order the District to rescind the redemption and issue a tax deed to Stuart) or damages represented by the difference between his tax purchase price and the market value of each property. The District argued that in at

least one of the cases it had failed to give the redeeming lienholder notice of the tax sale and therefore could not refuse the redemption. As to the other two cases, neither side introduced evidence indicating whether the redeeming property owners alleged any sort of defect in the District's notice or sale.

The trial court ruled that, under the plain language of the statute, Stuart could receive only the 1% per month interest authorized by § 47–1304 for the timely redemptions. The trial court then held that Stuart was not entitled to damages for the untimely redemptions. Specifically, the court denied Stuart damages on the ground that he was entitled only to his statutory remedy, a refund with interest. Finally, as to the untimely redemptions, the trial court also denied Stuart's demand for specific performance on the ground that Stuart had failed to join the property owners "as necessary parties or as third party defendants." Stuart appeals these rulings.

## II.

■ When interpreting a statutory scheme, we look first at the plain language of the statute. *See James Parreco & Son v. District of Columbia Rental Housing Comm'n,* 567 A.2d 43, 45 (D.C.1989); *Peoples Drug Stores, Inc. v. District of Columbia,* 470 A.2d 751, 753 (D.C.1983) (en banc). The tax sale statute provides that interest will be paid to the tax purchaser, upon refund, at a rate of 1% per month. *See* D.C.Code § 47–1304; *see also* D.C.Code § 47–1306 (Supp. 1996) (providing that owner has right of redemption but must pay "12% per annum" interest, i.e., 1% per month, "for the use of the purchaser"). Thus, under the tax sale

court's factual findings. *See Cobb v. Standard Drug Co.,* 453 A.2d 110, 112 (D.C.1982).

**2.** One property was sold for failure to pay for an abatement of nuisance. *See* D.C.Code § 5–513 (1994 Repl.); D.C.Code § 47–1205 (1990 Repl.). Two were sold pursuant to sewage and water liens and were redeemed after the 180 day redemption period for properties sold under § 43–1529, but before Stuart demanded a tax deed. The District apparently determined that each sale had been invalid and refunded Stuart's money for these purchases with a rate of interest of only

6% per year. *See* D.C.Code § 47–1308 (1990 Repl.) (invalid sales). Stuart did not challenge the rate of interest at trial, nor does he do so on appeal.

**3.** One of the lots was redeemed by a lienholder, the other two by the property owners. The statutory redemption period for property sold to abate a nuisance is six months. *See* D.C.Code §§ 47–1205(c), –1307(b) (1990 Repl.). The redemption period for properties sold to satisfy water and sewer liens is 180 days. *See* D.C.Code § 47–1304(d) (Supp.1996).

statute, the prescribed interest paid by the redeeming property owner is the same as the interest payable to the tax purchaser and, indeed, is expressly earmarked for that purchaser.

In contrast, nothing in the water and sewer lien statute suggests that the District collects the interest from the redeeming property owner on behalf of the purchaser. *See* D.C.Code § 43–1529. While Stuart's argument has some appeal, it appears from the statutory scheme—particularly when compared with the tax sale statute—that the Council intended the 2% per month interest rate in § 43–1529 to provide the District with additional water and sewer revenue, as well as to give defaulters a substantial incentive to make speedy payment and redemption. In any event, this explanation appears more likely to reflect the Council's intent than an explanation saying the Council wished to provide a greater benefit to a tax sale purchaser who happened to buy property subject to a water and sewer lien than to a purchaser who bought property subject to a tax lien. We therefore affirm the trial court's ruling that Stuart should receive interest on his refund for the timely redemptions at a rate of 1% a month.

### III.

■ As to the untimely redemptions, we conclude that Stuart's claim for damages is foreclosed by our recent decision in *McCulloch v. District of Columbia*, 685 A.2d 399 (D.C.1996). There, we held that a tax sale purchaser has no remedy other than the statutory remedy of a refund with interest, even when the District negligently allows redemption after the statutory redemption period has run. *See id.* at 403–404. We therefore sustain the trial court's ruling that Stuart may not claim damages from the District in lieu of, or in addition to, the refund of his purchase money plus accumulated interest.

■ We also affirm the trial court's ruling that Stuart may not sue the District for specific performance. The trial court stated the reason for withholding such relief as the absence of "necessary parties" or "third party defendants," namely, the redeeming property owners. Stuart argues, as to one of the properties, that the lienholder (a bank) was not a proper party because the lien was perfected after the redemption period had ended. He then says that, in any event, neither that lienholder nor the other property holders were necessary parties. He adds—and the District concedes on appeal—that the trial court should have permitted him to join any necessary party under Super. Ct. Civ. R. 19 (persons needed for just adjudication) and Super. Ct. Civ. R. 21 (misjoinder and nonjoinder of parties).[4]

Ordinarily, we would agree with Stuart and the District and remand for proper joinder. *See Capital City Corp. v. Johnson*, 646 A.2d 325, 329 (D.C.1994); *Raskauskas v. Temple Realty Co.*, 589 A.2d 17, 20–21 (D.C. 1991). We do not do so, however, because we conclude that Stuart had no action against the District for specific performance, and thus there is no suit to join. *See Francis v. Recycling Solutions, Inc.*, 695 A.2d 63 (D.C. 1997). In *McCulloch*, we stated that any claim for relief outside the statutory remedy against the District must lie entirely against the redeeming property owners (or lienholders):

> We note that our disposition of this case does not necessarily leave without a remedy those tax sale purchasers who present meritorious claims. If [appellants] believe that some of the properties were redeemed by the original owners in violation of [appellants'] rights, for example, they are free to put that view to the test by bringing an action against the original owners for ejectment or to quiet title.... [T]he sole remedy against the District is the return of the [appellants'] payments, with interest.

*McCulloch*, 685 A.2d at 404. Even if we considered Stuart's and the District's invocation of Rule 19 as an attempt to amend the complaint under Super. Ct. Civ. R. 15(c)(3), *see Francis*, at —— (noting that invocation of Rule 19 also may be interpreted as re-

---

4. For lack of a transcript, see *supra* note 1, we do not know whether Stuart sought such joinder at trial.

quest to amend and substitute party under Rules 15 and 21), the time has passed for an amendment changing parties to relate back to the original complaint, since there is no evidence, or even a proffer, that a complaint against the redeeming parties would satisfy the requirements of Super. Ct. Civ. R. 15(c)(3) (providing that amendment changing party must be sought within 60 days unless new party to be named has received sufficient notice and is not prejudiced); *see Arrington v. District of Columbia,* 673 A.2d 674, 679–680 (D.C.1996) (noting that when changing party defendant, notice requirements will be met only where: (1) claim arose from conduct detailed in pleading; (2) new party received enough notice to avoid prejudice; (3) new party knew or should have known that, but for mistake concerning identity, action would have been brought against it; (4) second and third requirements were met during applicable statute of limitations period) (citing *Schiavone v. Fortune,* 477 U.S. 21, 29, 106 S.Ct. 2379, 2384, 91 L.Ed.2d 18 (1986)); *Pritchett v. Stillwell,* 604 A.2d 886, 888 (D.C.1992) (noting that if new party added, Rule 15 notice requirements must be met). We therefore affirm the trial court's order granting judgment for the District.[5]

*Affirmed.*

---

**5.** We may affirm the judgment on grounds other than those relied on by the trial court. *See* *Sheetz v. District of Columbia,* 629 A.2d 515, 519 n. 5 (D.C.1993).