**RUPSHA 2007, LLC, Appellant,**

v.

**James KELLUM, et al., Appellees.**

No. 09–CV–1330.

District of Columbia Court of Appeals.

Argued Oct. 5, 2010.
Decided Nov. 17, 2011.

Seth Slomovitz, Washington, DC, with whom Eric Sayles, was on the brief, for appellant Rupsha 2007, LLC.

Daniel S. Volchok, Washington, DC, with whom Jody Manier Kris, Christopher Herrling, Melanie D. Coates, Rawle Andrews, Jr., and Vanessa A. Buchko, were on the brief, for appellee Theresa Banks.

Mary L. Wilson, Senior Assistant Attorney General, with whom Peter J. Nickles, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for appellee District of Columbia.

Before WASHINGTON, Chief Judge, Blackburne–Rigsby, Associate Judge, and REID,* Associate Judge, Retired.

BLACKBURNE–RIGSBY, Associate Judge:

This appeal arises because the District of Columbia ("District") made an adminis-

---

* Judge Reid was an Associate Judge of the court at the time of argument. Her status changed to Associate Judge, Retired, on April 7, 2011.

trative error that resulted in a tax sale purchaser paying for a property that should not have been offered for sale. There is no dispute that the purchaser, appellant Rupsha 2007, LLC ("Rupsha"), should be reimbursed, rather we are asked to determine who should reimburse Rupsha and the amount for which Rupsha is entitled to reimbursement. The amount for which Rupsha is entitled to be reimbursed is dictated by statute,[1] and depends on how the erroneous tax sale is retracted—whether Rupsha's Certificate of Sale for Taxes ("Tax Certificate") should be declared void *ab initio,* or whether the tax sale should be cancelled. If, as the District argues, the Tax Certificate is declared void *ab initio,* under the statute, Rupsha forfeits all payments it made to the District.[2] *See* D.C.Code §§ 47–1355(b)(2), – 1377(b) (2001). If the sale is cancelled, Rupsha is entitled to the purchase price, as well as statutory interest, a refund of paid taxes that accrued after the sale, legal expenses, and attorney's fees. *See id.* §§ 47–1366, –1348(c), –1361 and –1377(a).

When this matter was brought before the Superior Court, the trial court found that the District should not have sold the property at the tax sale because the owner paid the final payoff amount as directed in her Notice of Delinquency ("Notice"). Thus, the Superior Court determined that the owner was not obligated to redeem her property. We agree and affirm this ruling. However, the Superior Court also found that Rupsha's Tax Certificate was

void *ab initio.* With this we cannot agree. We hold that the District should have cancelled the tax sale and thereby paid to Rupsha the purchase price, statutory interest, taxes paid on the property, legal expenses, and attorney's fees Rupsha incurred in excess of the purchase price. We further hold that because the District did not cancel the sale, the Superior Court should have set aside the sale as cancelled, rather than setting aside the sale as void *ab initio.* Therefore, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

### I. Factual Background

In May 2007, appellee Theresa Banks ("Ms. Banks" or "owner")[3] received a Notice from the District's Office of Tax and Revenue ("OTR") indicating that a total of $929.78 in taxes, penalties, and interest was due and owing for her property at 5400 Drake Place, in Southeast Washington, D.C. ("Property"). Ms. Banks brought the Notice to an OTR satellite office, where an OTR representative advised her that the actual amount she owed, including penalties and interest, had risen to $1,100.47. Ms. Banks paid this amount within a few days, but was unaware that this amount only reflected a portion of the outstanding taxes she owed on the property because the OTR representative quoted her the incorrect amount.[4] Because the date of the District's annual tax sale was quickly approaching, the OTR representative advised Ms. Banks to contact the main OTR office to request that the Property be

---

1. The statutory provisions governing tax sales of real property are found in D.C.Code §§ 47–1330 through –1385 (2001) ("Tax Sale Statute").

2. However, the District agreed to refund the purchase price of the property.

3. James and Edna Kellum are the record owners of the property at issue in this case, but are now deceased. Edna Kellum be-

queathed the property to Ms. Banks in her will, and Ms. Banks is in the process of transferring title into her name.

4. Ms. Banks's payments made current the outstanding 2005 property taxes and a portion of the 2006 property taxes. An outstanding balance of $822.39 for 2006 property taxes and a 2003 $200 Clean City lien remained.

removed from the list of those to be sold, which Ms. Banks did.

However, the Property remained on the list of properties to be sold at the District's annual tax sale on July 13, 2007. The purchaser, Mohammad Sikder, paid $1,100.47, plus a surplus [5] of $6,000, for the Tax Certificate for the Property. Sikder subsequently timely filed his complaint to foreclose Ms. Banks's right to redeem the Property.[6] On December 10, 2008, appellant Rupsha replaced Sikder as plaintiff in the action to foreclose Ms. Banks's right to redeem the Property. Ms. Banks first became aware that the Property was sold and that her final payoff amount did not include all outstanding taxes when she was served with Rupsha's complaint to foreclose her right of redemption. She promptly paid all outstanding taxes, penalties, and interest due to the OTR, and the Property was not transferred to Rupsha because the court did not enter a final order foreclosing Ms. Banks's right of redemption. However, Ms. Banks did not reimburse Rupsha for its legal expenses and attorney's fees related to the action to foreclose her right of redemption, nor did the she pay any statutory interest to Rupsha, as would be required in the normal course of a redemption.[7]

On January 2, 2009, Rupsha received a letter from the OTR stating that because the Property "was not eligible to be sold pursuant to applicable provisions of the D.C. Code, the ... [t]ax [s]ale ... was void *ab initio*."[8] The OTR refunded only the purchase price of the property to Rupsha on February 20, 2009. The parties then appeared at a hearing before Judge Alfred Irving to determine the validity of Rupsha's Tax Certificate. Judge Irving found that "the tax sale should not have occurred" and thus the Tax Certificate was "void *ab initio*." Rupsha subsequently filed a motion to alter the trial court's ruling pursuant to Super. Ct. Civ. R. 59(e), which the trial court denied. The court relied upon D.C.Code § 47–1341,[9] which

---

5. "Surplus" means the portion of the bid at the tax sale that exceeds the taxes, penalties, interest, and costs for which the property was sold. D.C.Code § 47–1330.

6. The owner has the right to redeem a property sold at a tax sale at any time before the Superior Court issues a judgment foreclosing that right. D.C.Code § 47–1360.

7. To redeem a property, a redeeming party is required to pay "the amount paid by the purchaser for the real property exclusive of surplus, with interest thereon." D.C.Code § 47–1361(a)(1). Additionally, the owner pays all other taxes paid by the purchaser (with interest), and any legal expenses and attorney's fees associated with the action to foreclose redemption. *Id.* §§ 47–1361(a)(4), – 1377(a)(2).

8. The letter did not cite to any provisions of the D.C. Code as a basis for OTR's authority to deem the sale void *ab initio*.

9. D.C.Code § 47–1341 states, in relevant part:

**Notice of Delinquency.**
(a) At least 30 days before real property is first advertised for a tax sale under this chapter, the Mayor shall mail to the person who last appears as owner of the real property on the tax roll, ... a notice of delinquency stating the name of the person who last appears as owner on the tax roll, identifying ... the real property to be sold, and the amount of taxes due (whether included in the actual notice or by attached tax bill)....
(b) Failure of the Mayor to mail the notice of delinquency as provided in subsection (a) of this section, or to include any taxes in the notice of delinquency, shall not:
(1) Invalidate or otherwise affect a tax;
(2) Invalidate or otherwise affect a sale made under this chapter to enforce payment of taxes;
(3) Prevent or stay any proceedings under this chapter; or
(4) Affect the title of a purchaser.
(c) Payment of the total amount stated in the notice of delinquency and as directed in the notice shall preclude the real property

outlines the requirements that the District must follow with respect to providing notice of a property tax delinquency. Judge Irving concluded that D.C.Code § 47–1341(b) had to be read in conjunction with D.C.Code § 47–1341(c), which states: "Payment of the total amount stated in the notice of delinquency and as directed in the notice shall preclude the real property from being offered at the tax sale to which the notice corresponds." The language on the Notice states: "Notice is given to you that unless all taxes in arrears and appearing on this Notice are paid within 30 days from the date of this notice, the Mayor will proceed to sell the above real property." Judge Irving found that "[t]he conjunction 'and' indicates that the amount contained in the notice, which too is an amount in arrears, is the amount the taxpayer must remit in order to avoid sale of the property at the tax sale." Judge Irving therefore concluded that the language of the notice was "clear and unambiguous: [t]he statute requires that property not be sold if the tax amount set forth within the notice [is] paid. Accordingly, the [c]ourt must set aside the tax sale because it is void *ab initio*." Rupsha timely filed its notice of appeal.

## II. Discussion

■ We review the trial court's construction of the tax sale provisions of the D.C. Code *de novo. Carter v. State Farm Mut. Auto. Ins. Co.,* 808 A.2d 466, 470 (D.C.2002). We begin our process of statutory interpretation by looking at the statute on its face, and if the meaning is clear from the face of the statute, we must give effect to that plain meaning. *See BSA 77 P St., LLC v. Hawkins,* 983 A.2d 988, 995 (D.C.2009). "[I]ndividual words of a statute are to be read in the light of the statute taken as a whole, and where possi-

ble, courts should avoid constructions at variance with the policy of the legislation as a whole." *District of Columbia v. Beretta U.S.A. Corp.,* 940 A.2d 163, 171 (D.C. 2008) (internal citations and quotation marks omitted); *see also Sch. St. Assocs. Ltd. P'ship v. District of Columbia,* 764 A.2d 798, 805–06 (D.C.2001) (en banc). Furthermore, each provision of the statute should be construed to give effect to all of the statute's provisions, not rendering any provision superfluous. *See Thomas v. District of Columbia Dep't of Emp't Servs.,* 547 A.2d 1034, 1037 (D.C.1988).

### A. Ms. Banks Paid the Delinquent Tax Amount as Directed in Her Notice and Is Not Required to Exercise Her Right of Redemption

■ Rupsha argues that the Property was properly sold because Ms. Banks still owed taxes on the Property, irrespective of whether she paid the amount listed on her Notice. Therefore, appellant contends, Ms. Banks should have redeemed the Property, which would have entitled Rupsha to reimbursement for the purchase price, statutory interest, legal expenses, and attorney's fees. *See* D.C.Code §§ 47–1360, –1361, –1377. However, the Property was not properly sold. Under the statute, "the Mayor shall sell all real property on which the tax is in arrears *unless otherwise provided by law." Id.* § 47–1332(a) (emphasis added). Another statutory provision specifically precludes the Mayor from offering a property at a tax sale if the owner pays "the total amount stated in the notice of delinquency and as directed in the notice[.]" *Id.* § 47–1341(c). Ms. Banks paid the amount in the Notice, as well as the amount "directed in the notice" because she went to the OTR office to obtain her final payoff amount, and paid that amount. Taxes remained in arrears

from being offered at the tax sale to which the notice corresponds.

because of the OTR's failure to provide Ms. Banks with the correct payoff amount. Ms. Banks performed what she was required to do under the statute to prevent the sale of the Property. Thus, the Mayor was not authorized to sell the Property.

■ Despite this, the District sold the Property. Rupsha contends that once the Property was sold, the sale remained valid, and Rupsha could foreclose on Ms. Banks's right to redeem the Property, unless Ms. Banks exercised her right to redeem by paying the outstanding taxes and other costs associated with redemption. According to Rupsha, the sale remained valid notwithstanding OTR's administrative error in calculating the amount of taxes Ms. Banks owed on the Property. Rupsha relies on D.C.Code § 47–1341(b) in support of its argument, contending that the failure of the OTR to "include any taxes in the notice of delinquency, shall not . . . invalidate or otherwise affect a sale." Although it is true that under § 47–1341(b), the District's administrative failure to provide Ms. Banks with the correct final payoff amount could not serve as the basis for invalidating Rupsha's Tax Certificate, it is also true that under § 47–1341(c), "[p]ayment of the total amount stated in the notice of delinquency and as directed in the notice shall preclude the real property from being *offered* at the tax sale to which the notice corresponds." (Emphasis added.) A plain reading of these provisions together leaves the parties in a predicament where the sale should not have taken place, but did and cannot now be invalidated solely on the basis of the inaccurate

payoff amount provided by the OTR. Although the sale cannot be invalidated because of the administrative error, it would be unfair to Ms. Banks to require her to redeem the Property, and pay all the associated expenses, when she performed all that was required under the statute to prevent the Property from being offered in a tax sale in the first instance. Nor should Rupsha be required to forfeit reimbursement for the purchase price and additional expenses it incurred in purchasing the Property, when Rupsha was not at fault. To resolve this predicament, we look to the legislative history, which states "[i]f the owner pays the amount in the notice, the property will not be sold." *See* D.C. Council, Report on Bill 13–586 (Sept. 28, 2000) at 19; *see also Beretta U.S.A. Corp., supra*, 940 A.2d at 171 ("[C]ourts should avoid constructions at variance with the policy of the legislation as a whole."). We also look to other statutory provisions and the statute as a whole to see whether other provisions provide a way to reconcile the plain reading of the above provisions. *Beretta U.S.A. Corp., supra*, 940 A.2d at 171 ("[I]ndividual words of a statute are to be read in the light of the statute taken as a whole[.]"). We note that under D.C.Code § 47–1366,[10] the Mayor may step into the shoes of the redeeming party, "to prevent an injustice to the owner" by cancelling the sale. This provision of the statute provides a way for the Mayor to step in as the redeeming party to prevent this injustice. This interpretation is consistent with the plain reading of the statute, the legislative history and the other provisions of the

10. D.C.Code § 47–1366 states:

**Cancellation of sale by Mayor.**

The Mayor may cancel a sale before the issuance of a final order by the Superior Court to prevent an injustice to the owner or person with an interest in the real property. In the event of such cancellation, the Mayor shall pay to the purchaser the

amount which the purchaser would have received if the real property had been redeemed, but no part of such amount shall be deemed a payment of tax on behalf of the real property. A certificate of redemption, if necessary, shall be executed and filed by the Mayor with the Recorder of Deeds for no fee.

statutory scheme, particularly since it is clear that requiring redemption by the owner is inappropriate where, as here, there was an administrative error by the District resulting in injustice to an owner. Therefore the District, not the owner, should reimburse Rupsha.

### B. The District Lacks the Authority to Deem the Tax Certificate Void *Ab Initio* in the Absence of Any Wrongdoing By Rupsha

■ Although D.C.Code § 47–1355(a) gives the District authority to declare a Tax Certificate void, it permits this only in limited circumstances where there is evidence of wrongdoing on the part of the purchaser. Specifically, except as otherwise provided, a certificate of sale shall be void if: (1) the purchaser does not file suit to foreclose the right of redemption within one year of the date of sale; (2) the purchaser owes taxes to the District for which a property could be sold at a tax sale; (3) the foreclosure action is dismissed for lack of prosecution; (4) the purchaser fails to pay all other taxes owed on the property within 30 days of the final order; and (5) the sale is set aside because of the purchaser's fraud. *See* D.C.Code § 47–1355(a). The District does not contend that any of the above circumstances applies to Rupsha. However, the District

asks us to interpret this list in § 47–1355(a) as non-exhaustive because, according to the District, there are statutory and regulatory provisions "otherwise provided" that allow it to void a Tax Certificate for administrative errors.

The District cites two statutory provisions—§§ 47–1355(c) [11] and –1377(b) [12]—that purportedly authorize the OTR to void a Tax Certificate resulting from its administrative error. However, these provisions do not give the OTR authority to void a sale beyond that provided in § 47–1355(a). Section 47–1355(c) does not grant an additional basis for voiding sales, but rather forbids the District from applying the forfeiture remedy to circumstances outside of the five delineated under § 47–1355(a). Additionally, § 47–1377(b) does not grant the District an additional basis for voiding a Tax Certificate, but rather explains that if a Tax Certificate is void, not only does the purchaser forfeit all payments made to the District, but he also cannot try to recoup these expenses from the redeeming party who later succeeds in redeeming the property.[13] Indeed, the District cannot point to any other provision in the statute to support its argument that the "except as otherwise provided" language of § 47–1355(a) indicates that there are other reasons to void a Tax Certificate outside the five enumerated.[14]

---

11. Section 47–1355(c) states: "Subsection (b) [forfeiture provisions] of this section shall not apply if a judgment or sale is set aside in the absence of fraud on the part of the purchaser and the certificate of sale is not void under subsection (a) [circumstances warranting a void sale] of this section."

12. Section 47–1377 sets forth the expenses the redeeming party is required to reimburse the purchaser. Subsection (b) states: "No purchaser of a certificate of sale shall be reimbursed for expenses incurred ... if the certificate becomes void under this chapter."

13. When a Tax Certificate is void, the property is deemed "bid off in the name of the District." D.C.Code § 47–1355(b)(3). The owner may still redeem the property from the District and does so by paying the taxes with interest to the Mayor. *Id.* § 47–1361(a)(2). Section 47–1377(b) ensures that the purchaser whose sale was deemed void and whose payments are forfeited to the District, does not try to recoup his expenses later from the redeeming party.

14. *See, e.g., Jones v. Thompson,* 953 A.2d 1121 (D.C.2008); *Jones v. Grieg,* 829 A.2d 195 (D.C. 2003); *Assoc. Estates, LLC v. Caldwell,* 779 A.2d 939 (D.C.2001); *Malone v. Robinson,*

As further support for declaring the Tax Certificate void *ab initio,* the District relies on the regulations promulgated under the Tax Sale Statute that purportedly give the District authority to void a Tax Certificate. The regulations provide certain "rules and prerequisites to be followed when a Certificate of Sale is void based on failures by the tax sale purchaser, and/or invalid from the date of sale, *based on administrative failures.*" 9 DCMR § 316.9 (emphasis added). For example, the regulations specify "circumstances that may occur that may invalidate a Certificate of Sale … shall include … [a]ny other action taken by the OTR that may have inadvertently caused a sale of the real property tax lien." 9 DCMR § 316.9(b)(7). This circumstance squarely fits the situation of the parties in this case because the administrative error by the OTR "inadvertently caused" the sale of Ms. Banks's property to Rupsha.

▇ The District does not dispute the applicability of 9 DCMR § 316.9(b) to the circumstances in this case,[15] however it interprets the section to mean that the proper remedy is to void the Tax Certificate. Specifically, the District reasons that 9 DCMR § 316.9(b) makes a reference to "section 316.9," and interprets this to be a reference back to § 316.9(a), which declares a certificate void and payments forfeited. This means that the District can void a sale on the basis of an administrative failure. Although we generally defer to the agency's interpretation of its

own regulations, we cannot do so here. *See Mallof v. District of Columbia Bd. of Elections and Ethics,* 1 A.3d 383, 391 (D.C. 2010) ("We must defer to [an agency's] interpretation of the regulation it has promulgated unless its interpretation is 'plainly wrong or inconsistent with the governing statute.'") (quoting *Kuri Bros., Inc. v. District of Columbia Bd. of Zoning Adjustment,* 891 A.2d 241, 244 (D.C.2006)); *see also Washington Metro. Area Transit Auth. v. District of Columbia Dep't of Emp't Servs.,* 825 A.2d 292, 294–95 (D.C. 2003) ("We defer if the decision is reasonable in light of the language of the statute (or rule)[.]") (citing *Lincoln Hockey, LLC v. District of Columbia Dep't of Emp't Servs.,* 810 A.2d 862, 866 (D.C.2002)); *Tenants of 738 Longfellow St., N.W. v. District of Columbia Rental Hous. Comm'n,* 575 A.2d 1205, 1213 (D.C.1990) ("[I]t is axiomatic that a regulation [must] be consistent with the statute under which it was promulgated.") (second alteration in original) (quoting *District of Columbia v. Catholic Univ. of Am.,* 397 A.2d 915, 919 (D.C. 1979)) (internal quotation marks omitted).

▇ We reject the OTR's interpretation that 9 DCMR § 316.9(b) gives it authority to void sales resulting from administrative failures because the *statute* only gives the District authority to void tax sales in circumstances of purchaser wrongdoing. *See* D.C.Code § 47–1355(a). "Agencies are creatures of statute and their authority and discretion are limited to that which is

---

614 A.2d 33 (D.C.1992). In the cited cases, the OTR failed to strictly comply with the statute regarding providing notice of expiration of the redemption period for due process purposes. The statute mandates that such notice be sent by certified mail. Here, in contrast, the District did strictly comply with the statute and provided notice of the delinquency. The OTR simply failed to provide accurate information about the payoff amount.

**15.** The District points to a different subsection of 9 DCMR § 316.9(b) as more applicable to this case: "Taxes paid prior to the tax sale." 9 DCMR § 316.9(b)(1). However, as noted above, taxes were not fully paid prior to the tax sale. Therefore, the more appropriate circumstance is embodied by 9 DCMR § 316.9(b)(7).

granted under their founding statutes. Therefore, regulations they enact pursuant to that statutorily provided authority cannot expand that authority." *District of Columbia v. Brookstowne Cmty. Dev. Co.,* 987 A.2d 442, 449 (D.C.2010). The only statute giving the District authority to void a tax sale is found in D.C.Code § 47–1355(a). There are only five circumstances in which the District can void a sale, each of which involve purchaser wrongdoing. *See* D.C.Code § 47–1355(a)(1)–(5). The regulation regarding voiding sales lists the same instances of purchaser wrongdoing and clarifies that the remedy is forfeiture of all payments. *See* 9 DCMR § 316.9(a)(1)-(6). Interpreting 9 DCMR § 316.9(a) in this manner does not expand the District's power to void tax sales under the statute, but rather mirrors it.

However, if, as the District suggests, we also interpret 9 DCMR § 316.9(b)—the regulation regarding invalidating a sale due to administrative failures—as giving the District authority to void Tax Certificates under 9 DCMR § 316.9(a), this would greatly expand the District's power to void tax sales beyond that contemplated by statutes. It would allow the District to apply the extreme remedy of forfeiture in circumstances where there was no purchaser wrongdoing. This would directly contravene the statute. *See* D.C.Code §§ 47–1355(a) and (c). Thus, we are unpersuaded by the District's interpretation of the regulation.

We also reject the OTR's interpretation of 9 DCMR § 316.9(b) because it is inconsistent with its prior interpretation. In 2009, the District agreed that 9 DCMR § 316.9(b) was "intended to refer to Section 316.8 and not to Section 316.9." *Rhea v. Capitol Homes & Cmtys.,* No.2008 CA 1279 (D.C.Super. Ct. June 1, 2009). While the trial court decision is not binding on

this court, it has some persuasiveness, given that the District in that case interpreted the regulation to refer to § 316.8 rather than § 316.9(a). Such inconsistency in the District's interpretation of this regulation counsels in favor of according less deference to the interpretation of the regulation than the District asks us to adopt in this case. *See Tenants of 738 Longfellow St., N.W., supra,* 575 A.2d at 1213 (noting that the "deference which courts owe to agency interpretations … plummets substantially" when the interpretations are inconsistent and short-lived) (citing *Superior Beverages, Inc. v. District of Columbia Alcoholic Bev. Control Bd.,* 567 A.2d 1319, 1326 (D.C.1989) (declining to defer to the District where "the construction of the regulations at issue has been neither consistent nor of long standing.")).

We hold that the more reasonable interpretation is that the regulation refers back to 9 DCMR § 316.8. Interpreting 9 DCMR § 316.9(b) to refer back to the rules governing cancellation of a sale in § 316.8 ensures that we do not give effect to "a rule out of harmony with the statute." *See Tenants of 738 Longfellow, supra,* 575 A.2d at 1213 (quoting *District of Columbia v. Jones,* 287 A.2d 816, 818) (internal quotation marks omitted). This interpretation is consistent with the regulatory scheme in 9 DCMR § 316 since § 316.9(b) includes the phrase "cancelled according to the rules in …" and § 316.8 pertains to "the rules and prerequisites for [c]ancellation of a Certificate of Sale by OTR." As noted earlier, under the Tax Sale Statute, cancellation is proper to prevent injustice to the owner. D.C.Code § 47–1366. Each of the circumstances listed in 9 DCMR § 316.9(b) is a specific illustration where injustice would result to an owner. *See, e.g.,* 9 DCMR § 316.9(b)(1) ("Taxes were paid prior to the tax sale"); § 316.9(b)(5) ("Payment applied to incorrect square/lot"). Just as the *statutory* framework requires can-

cellation to prevent injustice to the owner, so, too, does the *regulatory* scheme, through 9 DCMR § 316.9(b). Additionally, interpreting 9 DCMR § 316.9(b) to require cancellation "according to the rules in section 316.[8]" brings consistency to the statute and its regulations, because the remedy for cancellations under the statute would be the same remedy for cancellations under the regulations. Under the statute, the purchaser receives "the amount the purchaser would have received if the property had been redeemed," which includes the purchase price, statutory interest, refund of paid taxes that accrued after the date of sale, legal expenses, and attorney's fees. D.C.Code § 47–1366; *see also* §§ 47–1361(a)–(d), –1377. Under our interpretation of the regulation, the purchaser is reimbursed in the same manner, and is refunded the purchase price, statutory interest, refund of paid taxes that accrued after the date of sale, legal expenses, and attorney's fees. 9 DCMR § 316.8(b).

For the reasons discussed, we conclude that the District did not have the authority to declare the Tax Certificate void. The District's authority to declare a Tax Certificate void is limited to the five enumerated reasons found in § 47–1355(a), which contemplate wrongdoing on the part of the purchaser. The implementing regulations cannot be interpreted to expand the reasons set forth in the statute. The OTR's administrative error in mistakenly selling the Property after Ms. Banks paid the payoff amount could not serve as a basis for voiding the Tax Certificate.[16]

## C. The District's Authority Was Limited to Cancelling the Sale in Light of Its Administrative Error

 Because the District did not have the authority to declare the Tax Certificate void *ab initio,* the only other remedy available to the District to retract the sale in light of its administrative error was to cancel the sale. This remedy has its statutory basis in D.C.Code § 47–1366 (emphasis added):

> The Mayor may cancel a sale before the issuance of a final order by the Superior Court *to prevent an injustice to the owner* or person with an interest in the real property. In the event of such cancellation, the Mayor shall pay to the purchaser the amount which the purchaser would have received if the real property had been redeemed[.]

There is no question that the owner will suffer an injustice if the tax sale is not cancelled. The District acknowledges that

---

**16.** We are also unpersuaded by the District's argument that the principle of caveat emptor applies to Rupsha, citing *McCulloch v. District of Columbia,* 685 A.2d 399, 402 (D.C. 1996). We noted in *McCulloch* that the private tax purchaser accepts economic risks when bargaining for tax liens, and so the District cannot be held liable for the fair market value of the property. *Id.; see also Robinson v. District of Columbia,* 372 A.2d 1005, 1008 (D.C.1977) (for the proposition that "changing circumstances can harm the lienholder's investment with no remedy against the taxing authorities.") However, both *McCulloch* and *Robinson* are easily distinguishable. Both were negligence actions where the purchaser was seeking to recover the fair market value of the property, and was not satisfied with the statutorily mandated remedy of a refund of the purchase price with interest. Neither case applies here because Rupsha is seeking what it is entitled to under the statute, not pursuing a claim under a negligence theory.

Furthermore, the application of caveat emptor to this case is problematic. The cases that the District cites were decided under the former statutory scheme. The current statutory provisions preclude applying the common law rule of caveat emptor. Specifically § 47–1366 was intended to address this precise situation to "prevent an injustice to the owner[.]"

it had "no authority to sell the property in the first instance in light of D.C.Code § 47–1341(c), precluding 'the real property from being offered at the tax sale' after Ms. Banks paid the applicable taxes." Thus, the cancellation provisions directly encompass the present situation. Prior to the Superior Court's order foreclosing the right of redemption, the District learned that the sale would result in an injustice to the owner, who paid the taxes as directed in the Notice. More than a year elapsed before the District declared the Tax Certificate void *ab initio*. As a possible redeeming party, Ms. Banks was subject to liability for the costs associated with the present litigation and the possible reimbursement of Rupsha's legal fees and expenses. The proper course of action for the District in these circumstances was to cancel the sale under D.C.Code § 47–1366 and "pay to the purchaser the amount which the purchaser would have received if the real property had been redeemed." The District should have stepped into the shoes of the redeeming party and paid Rupsha not just the purchase price, but all the fees that the redeeming party would have paid, including statutory interest, any taxes the purchaser paid on the Property, legal expenses, and attorney's fees.[17] *See* D.C.Code § 47–1366; *see also id.* §§ 47–1361(a)–(d), –1377(b).

## D. The Court's Authority Was Limited to Setting Aside the Sale in Light of the Absence of Fraud on Behalf of Rupsha

■ Although we conclude that the District was required to reimburse Rupsha, and the only available means under the statute to do so was through exercising the Mayor's authority to cancel a sale pursuant to D.C.Code § 47–1366, the District did not timely exercise this option. Therefore, Rupsha sought relief from the Superior Court. The Tax Sale Statute gives the Superior Court authority to set aside a sale under D.C.Code § 47–1380.[18] If the sale involved fraud on the part of the purchaser, the Superior Court must set aside the sale, but need not do anything more. D.C.Code § 47–1380(d). However,

17. The District contends that because the Mayor "may" cancel a sale to prevent injustice, it had the discretion not to do so. However, the implementing regulation makes clear that a Tax Certificate *shall* be cancelled to prevent an injustice to a real property owner. *See* 9 DCMR § 316.8(a). Moreover, under the circumstances of this case, it was the only available option for the District, so to do otherwise would be an abuse of discretion. *See Office of People's Counsel v. Pub. Serv. Comm'n*, 21 A.3d 985, 992 (D.C.2011) (finding that the agency "acted arbitrarily and contrary to law in the approach it took and the rationale it applied to arrive at its rulings").

18. D.C.Code § 47–1380 states:
 **Judgement setting aside sale.**
 (a) If the Superior Court shall set aside a sale, the amount required to redeem is: (A) the amount required by this chapter, as may be adjusted by the court, and (B) the reasonable value ... of all reasonable improvements made....

 (b) A sale shall not be set aside unless the real property is redeemed.
 (c) If the Superior Court sets aside a sale in the absence of fraud on the part of the purchaser, the Mayor shall repay to the purchaser:
 (1) The amount paid to the Mayor on account of the purchase price of the property sold, with interest thereon except surplus;
 (2) All taxes accrued after the date of sale that were paid by the purchaser ... with interest as would have been required to be paid by a redeemer;
 (3) The expenses collected by the Mayor and properly incurred under § 47–1377; and
 (4) The amount, as collected by the Mayor, of the value of all reasonable improvement made....
 (d) Notwithstanding any other provision of this section, if the Superior Court finds fraud on the part of the purchaser, the Superior Court shall set aside the sale.

if the Superior Court sets aside the sale for any other reason, the property must first be redeemed, the redeeming party must pay the amount directed by statute, as adjusted by the court, and, if there was no purchaser fraud, the Mayor must reimburse the purchaser the purchase price, any paid taxes, statutory interest, and other expenses. *Id.* §§ 47–1380(a)–(c). The Superior Court should have set the tax sale aside because it could not continue with foreclosing Ms. Banks's right of redemption. Further, since Rupsha did not engage in any fraud, the court was limited to setting the sale aside in the absence of fraud. While the Superior Court did set the sale aside, it did so by declaring the Tax Certificate void *ab initio*. This was error.

Because the Mayor's authority under the statute is limited to cancelling the sale, so too was the Superior Court's authority limited to setting aside the sale as cancelled rather than void *ab initio*. This is so because under this statute, a prerequisite to the Superior Court setting aside a sale is that the property be redeemed. D.C.Code § 47–1380(b). Under the circumstances of this case, the statute authorizes the Property to be redeemed in two ways: (1) Ms. Banks could redeem the Property—which we have already established would be unfair under the circumstances; or (2) the Mayor could serve as the redeeming party by cancelling the sale "to prevent an injustice to the owner" pursuant to § 47–1366. In light of the District's administrative error and subsequent failure to cancel the sale, the trial court should have required the District to cancel the sale under § 47–1366 and to act as the redeeming party under § 47–1361, which would enable the Superior Court to set aside the sale under § 47–1380(a)–(c). The statute provides no other means for the Superior Court to set aside the sale of the Property under the unique circumstances of this case.

## III. Conclusion

Accordingly, we affirm the Superior Court's finding that the District should not have sold the Property because Ms. Banks paid the amount set forth in her Notice. However, we hold that the court erred in finding that Rupsha's Tax Certificate was void *ab initio*. The appropriate remedy under the statute required the District to cancel the sale instead of deeming Rupsha's Tax Certificate void *ab initio*. As a result, the parties proceeded to litigate the case before the trial court, thereby subjecting Rupsha to incur more legal expenses. Accordingly, we reverse in part and remand for further proceedings consistent with this opinion, with instructions for the Superior Court to direct the District to cancel the sale and serve as the redeeming party, for purposes of reimbursing Rupsha for the statutory interest it is owed, any paid taxes (with interest), legal expenses, and attorney's fees through the date of cancellation.

*So ordered.*