*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 12-CV-695, 12-CV-696, 12-CV-1013,
12-CV-1241, 12-CV-1278, & 12-CV-1348

AEON FINANCIAL, LLC, APPELLANT/CROSS-APPELLEE,

v.

DISTRICT OF COLUMBIA, APPELLEE/CROSS-APPELLANT.

Appeals from the Superior Court
of the District of Columbia
(CA-1472-09, CA-1487-09, & CA-3938-10)

(Hon. Joseph E. Beshouri, Magistrate Judge)
(Hon. Melvin R. Wright, Reviewing Judge)

(Argued January 31, 2013                    Decided February 6, 2014)

*Malik J. Tuma* for appellant/cross-appellee.

*James C. McKay, Jr.*, Senior Assistant Attorney General, with whom *Irvin B. Nathan*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, and *Donna M. Murasky*, Deputy Solicitor General, were on the brief, for appellee/cross-appellant.

*Vanessa A. Buchko* filed a brief on behalf of Legal Counsel for the Elderly as *amicus curiae* in support of appellee.

Before BLACKBURNE-RIGSBY and MCLEESE, *Associate Judges*, and STEADMAN, *Senior Judge*.

MCLEESE, *Associate Judge*:  If an owner of real property in the District of Columbia fails to pay property taxes, the District may sell the property, in order to satisfy the unpaid tax obligation.  In some cases, the purchaser at the tax sale ultimately obtains title to the property.  In other cases, the delinquent property owner redeems the property, by paying delinquent taxes, interest, and certain expenses incurred by the tax-sale purchaser.  The interest owed by the delinquent taxpayer continues to accrue until the date of redemption, at a rate of 1.5% per month.  If a property is redeemed, the District thereafter must make a refund in the appropriate amount to the tax-sale purchaser.

In these cases, Aeon Financial LLC purchased the properties at issue at tax sales.  The delinquent tax sale purchasers subsequently made payments in order to redeem the properties, and the District determined that each of the properties had in fact been redeemed as of particular dates.  Aeon contended, however, that the delinquent property owners had not made payments in the amount necessary to redeem the properties, and that the properties therefore had not yet been redeemed.  Thus, according to Aeon, delinquent taxpayers would have to pay additional amounts of interest in order to redeem the properties, which in turn would increase the amount of the refund to which Aeon would be entitled if the properties ultimately were properly redeemed.

Aeon appeals from several trial-court orders that (a) concluded that the properties at issue had been properly redeemed by the delinquent property owners and (b) calculated the amounts of the redemption refunds due to Aeon. Aeon reiterates its position that the properties have not yet been properly redeemed and that the trial court thus incorrectly calculated the refund amounts. The District cross-appeals, arguing that the Superior Court erred in ordering the District to pay refunds to Aeon before Aeon dismissed its actions to foreclose redemption.

We first address a number of threshold issues, including whether we have jurisdiction over the appeals. On the merits, we ultimately conclude that a property is redeemed when, at the same time: (a) the District concludes in good faith, whether correctly or incorrectly, that all amounts levied by it have been paid; and (b) the tax-sale purchasers' reimbursable expenses have been paid. Because it is not clear that the trial court utilized this approach in determining the dates of redemption and refund amounts in these cases, we remand for further proceedings. In the cross-appeals, we hold that the District is not required to pay Aeon refunds until Aeon dismisses its actions to foreclose redemption.

**I.**

**A.**

Before addressing the parties' claims, we describe the pertinent statutes and regulations governing tax sales in the District of Columbia.

When an owner of real property in the District is delinquent in making property-tax payments, the District may sell the property at a public auction called a tax sale. D.C. Code § 47-1330 et seq. (2012 Repl.). Properties offered at a tax sale are generally sold for no less than the amount of unpaid taxes due (including penalties, interest, and costs), and bidders may add "surplus" amounts to their bid to purchase a property. D.C. Code §§ 47-1346 (c), -1330. Upon full payment of the bid amount, the District issues a certificate of sale to the tax-sale purchaser, documenting the sale of the property. D.C. Code §§ 47-1347, -1348.

The delinquent property owner may seek to redeem the property at any time until the right of redemption is foreclosed. D.C. Code § 47-1360. In order to redeem a property, the delinquent property owner must pay certain amounts, including the amount paid by the tax-sale purchaser at the tax sale (exclusive of

any surplus), subsequent taxes due, interest, and certain expenses of the tax-sale purchaser. D.C. Code §§ 47-1361 (a), -1377. *See also* D.C. Code §§ 47-1334, -1348 (b). The delinquent property owner generally must make that payment to the District, although certain expenses may be paid directly to the tax-sale purchaser if the tax-sale purchaser provides a release acknowledging payment of the expenses owed. D.C. Code § 47-1361 (a)(6). After the amounts specified by D.C. Code § 47-1361 (a) have been paid, the District notifies the tax-sale purchaser that the property has been redeemed. D.C. Code § 47-1361 (d). Once the District gives this notice, the tax-sale purchaser "shall surrender the certificate of sale and shall receive from [the District] the amount to which the [tax-sale] purchaser is entitled." *Id.*

If a delinquent property owner has not redeemed the property within six months of the tax sale, the tax-sale purchaser may file an action seeking to foreclose the right of redemption. D.C. Code § 47-1370 (a). The delinquent property owner can redeem the property while such an action is pending. D.C. Code § 47-1370 (d). If a dispute arises about the proper redemption amount, the Superior Court can determine the proper amount. D.C. Code § 47-1362 (a). Once a dispute regarding redemption arises, the District may not accept a redemption payment unless the Superior Court issues an order setting a redemption amount

and that order is filed with the Mayor.  D.C. Code § 47-1362 (c); *see also* 9 DCMR § 316.5 (f) (2013).

When finally resolving a suit to foreclose the right of redemption, the trial court may (1) bar the right of redemption; (2) vest title in fee simple in the tax-sale purchaser; or (3) set aside the sale and determine the redemption amount.  D.C. Code § 47-1370 (b).  In the absence of fraud by the tax-sale purchaser, the trial court may set aside a tax sale only if the property is redeemed.  D.C. Code § 47-1380 (b).  If the court sets aside the sale on grounds other than fraud by the tax-sale purchaser, the District is required to pay the tax-sale purchaser the redemption amount.  D.C. Code § 47-1380 (a), (c).  The District has the authority to cancel a tax sale, but if it exercises that authority, it must pay the tax-sale purchaser the redemption amount.  D.C. Code § 47-1366.

Because the redemption amount includes interest, the redemption amount will necessarily depend on the date of redemption.  *See* D.C. Code § 47-1361 (a); 9 DCMR § 316.6 (d) (statutory interest runs until date of redemption).  The D.C. Code does not specifically define the date of redemption, although as previously indicated, it does list certain payments as prerequisites to redemption.  *See, e.g.*, D.C. Code § 47-1361 (a), (d).  The regulations define the date of redemption as the

"earlier of the date payment of all taxes, assessments, penalties, interest, fees and costs has been posted to the applicable billing system, or the date owner provides [the Office of Tax and Revenue] with copies of the certified check and paid bank, or applicable agency, receipts confirming payment in full of all taxes, assessments, fees and costs." 9 DCMR § 316.12 (g). The regulations further provide that, once an action to foreclose redemption has been filed, a property will qualify for redemption only if the delinquent property owner "pay[s] in full . . . [a]ll taxes, assessments, fees, costs and expenses levied by a Taxing Agency," as well as certain other expenses of the tax-sale purchaser. 9 DCMR § 316.5 (a). In addition, if a dispute about the redemption amount arises after an action to foreclose redemption has been filed, the "property shall not be redeemed until the amount appearing on an order of the court is satisfied in full." 9 DCMR § 316.5 (f).

If a delinquent property owner redeems the property, the District is required to notify the tax-sale purchaser. D.C. Code § 47-1361 (d). The tax-sale purchaser must surrender the certificate of sale, and the District then must pay the tax-sale purchaser the "amount to which the purchaser is entitled." *Id.* This required payment is called a redemption refund, and its amount is specified by statute and regulation. D.C. Code § 47-1380 (c); 9 DCMR §§ 316.3, 316.6 (c). The redemption refund includes the amount paid at the tax sale, including any surplus;

interest on the amount of the tax delinquency; and certain other expenses of the tax-sale purchaser. *Id.* The interest on the delinquent taxes accrues at the rate of 1.5% per month and continues to accrue until the date of redemption but not thereafter. 9 DCMR § 316.6 (c), (d). If a tax-sale purchaser seeks a redemption refund after filing an action to foreclose redemption, the tax-sale purchaser must provide the District with a copy of the "praecipe that dismisses the foreclosure action and/or [a] copy of the Certificate of Cancellation that cancels the Certificate of Sale." 9 DCMR § 316.6 (a)(2). This requirement is a "prerequisite[]" for collecting a redemption refund. 9 DCMR § 316.6.

## B.

In 2008 and 2009, Aeon purchased the "Broadwater," "Wasef," and "Culbertson" properties, in addition to hundreds of other properties, at the District's real-property tax sales. After the expiration of the required six-month waiting period, Aeon filed complaints to foreclose the right of redemption for many of the unredeemed properties, including the Broadwater, Wasef, and Culbertson properties. In many of the cases, Aeon and the District disputed both whether the properties had been redeemed and how to calculate the redemption refunds.

The Superior Court organized the cases into several groups, each with a representative "lead" case. *Aeon Financial v. Broadwater* (CA-1487-09) was the lead case for a group of 20 cases, *Aeon Financial v. Wasef* (CA-1472-09) was the lead case for a group of 134 cases, and *Aeon Financial v. Culbertson* (CA-3938-10) was the lead case for a group of 35 cases. All of the cases were assigned to a magistrate judge.

While *Broadwater*, *Wasef*, and *Culbertson* were pending, the Superior Court resolved several general questions critical to the determination of redemption dates and the calculation of redemption refunds, in *Aeon Financial v. Haynes, et al.* (CA-1920-10). A magistrate judge made the initial ruling in *Haynes*, and a reviewing Superior Court judge later affirmed that ruling. *See generally* D.C. Code § 11-1732 (k) (2012 Repl.) (providing that certain magistrate-judge orders are subject to review by Superior Court judge). The reviewing court in *Haynes* concluded that the District had been committing three errors in determining the amount of interest for purposes of calculating redemption amounts. First, the District should have been charging delinquent property owners interest for the month in which the tax sale occurred. Second, the District should have been calculating interest each month based on the tax-sale purchase price (less any

surplus), not on the amount of unpaid tax in a given month. Third, the District should have been treating interest as continuing to accrue until all payments essential to redemption had been made, whereas the District had been stopping the accrual of interest before certain expenses were paid.[1]

The reviewing court then addressed the implications of these errors for whether, and if so when, the District should have treated the properties as redeemed. On that point, the reviewing court concluded that Aeon could not "undo redemption" based on errors that the District made in calculating and collecting taxes. Moreover, although Aeon was entitled to a refund in the proper amount, the reviewing court concluded that the District could permissibly make a refund payment that was greater than the redemption payment that the delinquent property owner made.

The reviewing court also stated a test for determining the date of redemption: a property is redeemed on the date that (a) taxes, as assessed by the District, reached a zero balance; and (b) all other payments required for redemption

---

[1] We do not understand the District to dispute for purposes of these appeals that its procedures for assessing interest were erroneous in the three respects identified by the reviewing court. We therefore see no need for further discussion of the reviewing court's rather complex analysis of those issues.

have been made. Finally, the reviewing court directed the magistrate judge to determine the proper refund amount on a case-by-case basis.

The magistrate judge subsequently applied the framework adopted in *Haynes* to the *Broadwater*, *Wasef*, and *Culbertson* properties, setting dates of redemption and calculating the refunds due to Aeon. In each case, the magistrate judge: (1) ordered the District to pay Aeon the refund within thirty days; (2) ordered Aeon to file a praecipe with the court acknowledging receipt of this payment; and (3) stated that the court would dismiss the foreclosure action when Aeon filed this praecipe. Both parties sought review in the Superior Court.

The District challenged the requirement that it pay refunds to Aeon before Aeon dismissed its actions to foreclose redemption, and Aeon challenged the determination that the properties had been redeemed (thus terminating the accrual of additional interest in Aeon's favor) and the resulting calculation of the amounts to be refunded to Aeon. The reviewing court affirmed the magistrate judge's orders in each case, except that the reviewing court dismissed as untimely Aeon's motion for review in *Wasef*. These consolidated appeals and cross-appeals followed.

## II.

We begin by addressing five threshold issues. First, we conclude that we have jurisdiction over the appeals. Second, we affirm the reviewing court's order dismissing as untimely Aeon's motion for review in *Wasef*. Third, we hold that Aeon has standing to raise all but one of its arguments. Fourth, we hold that the doctrine of caveat emptor does not preclude Aeon from asserting its rights to obtain a refund in the amount required by statute. Fifth, we decide that the resolution of these cases will not draw into question the title of the delinquent property owners to the properties at issue and will not impose additional monetary liabilities on the delinquent property owners.

## A.

We turn first to the question whether we have jurisdiction over these appeals. The orders at issue present a question of finality because they did not terminate the proceedings in the trial court. Rather, the orders provide that the cases would be dismissed only after the parties each took an action: the District was to pay Aeon the specified refund within thirty days, after which Aeon was required to file a praecipe with the court acknowledging receipt of that payment.

The District refused to make the ordered payments by the specified date, instead taking the position that it could not be required to make such payments until Aeon dismissed its actions to foreclose redemption. This court subsequently stayed the order requiring that the District pay refunds by a date certain. The trial court therefore did not dismiss the cases, which are still pending.

The parties agree that the orders are final and appealable. We nevertheless must ensure that we have jurisdiction. *See Murphy v. McCloud*, 650 A.2d 202, 203 n.4 (D.C. 1994). We conclude that the orders in this case are properly viewed as final and appealable. [2]

Generally, an order is final "when it terminates the litigation between the parties on the merits of the case, and leaves nothing to be done but to enforce by execution what has been determined." *District of Columbia v. Tschudin*, 390 A.2d 986, 988 (D.C. 1978) (quoting *St. Louis Iron Mountain & S. Ry. v. Southern Express*, 108 U.S. 24, 28-29 (1883)). "[I]f nothing more than a ministerial act

---

[2] Because we conclude that the orders at issue are final, we need not consider whether they would in any event be appealable either as orders granting an injunction or as orders affecting the possession of property. D.C. Code § 11-721 (a)(2)(A), (C) (2012 Repl.).

remains to be done, . . . the decree is regarded as concluding the case and is immediately reviewable." *Id.* (internal quotation marks omitted). The orders at issue in this case fully determined the legal rights and obligations of the parties, leaving to be done only ministerial acts relating to the execution of the orders. Although the parties did not complete those acts, at least in part because this court entered a stay, we nevertheless view the orders as final and appealable. *Cf., e.g.*, *Giove v. Stanko*, 977 F.2d 413, 415 (8th Cir. 1992) (treating as final and appealable order setting aside conveyance of property but retaining jurisdiction to permit plaintiff to proceed against property through writ of execution); *Taper v. City of Long Beach*, 181 Cal. Rptr. 169, 177-78 (Ct. App. 1982) (treating as final and appealable order dismissing action upon payment of sums due pursuant to separate judgment).

**B.**

Second, we address an issue specific to *Wasef*. The magistrate judge entered an initial order setting a refund amount in *Wasef* on March 2, 2012. On April 24, 2012, Aeon filed a motion for review of that order in the Superior Court. The reviewing court denied that motion as untimely. In its initial brief in this court, Aeon did not address the reviewing court's timeliness ruling. The District argued

in response that Aeon had abandoned any challenge in this court to the reviewing court's timeliness ruling, by failing to address that issue in its opening brief. In reply, Aeon argued that this court should overlook its failure to address the timeliness issue in its opening brief, that its motion for review was timely, and that the correctness of the underlying refund order is properly before this court even if the motion for review was untimely. We conclude that Aeon failed to properly preserve a challenge to the reviewing court's dismissal of Aeon's motion for review as untimely. We therefore affirm the reviewing court's dismissal of Aeon's challenge to the refund order in *Wasef*.

"[I]t is the longstanding policy of this court not to consider arguments raised for the first time in a reply brief." *Marshall v. United States*, 15 A.3d 699, 711 n.2 (D.C. 2011) (internal quotation marks omitted). For three principal reasons, we adhere to that policy in this case. First, Aeon does not identify a specific reason for this court to deviate from that policy. Second, the arguments that Aeon belatedly attempts to raise are not clearly articulated or fully developed. Third, some of Aeon's arguments do not appear persuasive at first blush and others would require the court to delve into complex and seemingly difficult procedural and

jurisdictional issues.[3] We therefore decline to address Aeon's belated challenge to the Superior Court's dismissal of its motion for review in *Wasef.*

## C.

Third, we address the District's claim that Aeon lacks prudential standing to raise the arguments it advances on appeal. This court has "generally . . . applied prudential limitations on the exercise of [its] jurisdiction." *Grayson v. AT&T Corp.*, 15 A.3d 219, 233-34 (D.C. 2011) (en banc). Under prudential standing requirements, a plaintiff "may not attempt to litigate generalized grievances, and may assert only interests that fall within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Community Credit Union Servs. v. Federal Express Servs. Corp.*, 534 A.2d 331, 333 (D.C. 1987) (internal quotation marks omitted). In addition, a plaintiff must generally

---

[3] For example, Aeon suggests that the time within which it was required to seek review in the Superior Court began to run not on March 2, 2012, the date the magistrate judge entered a single order setting refund amounts in a number of cases including *Wasef*, but rather on April 19, 2012, when the magistrate judge entered a separate order in *Wasef* alone, specifying the same refund amount, "for the convenience of the District of Columbia in processing a refund to [Aeon]." Aeon also appears to suggest in a footnote that any failure on its part to seek timely Superior Court review in *Wasef* is not an impediment to a ruling by this court on the merits in *Wasef*. But Aeon's reasoning in support of that suggestion is unclear. *See generally Gorbey v. United States*, 54 A.3d 668, 699 n.52 (D.C. 2012) (declining to consider argument "outlined, but not developed," in footnote).

"assert only its own legal rights." *Id.*

Aeon claims that the trial court erred in three interrelated respects: in ruling that the properties at issue had been redeemed, in determining the date on which the properties had been redeemed, and in calculating redemption amounts. We conclude that Aeon has prudential standing to make all but one of its arguments.

Aeon's challenge to the proper interpretation of the tax-sale statutes and regulations is not a generalized grievance, but rather reflects a claim that is specific to tax-sale purchasers involved in the redemption process. *See generally, e.g.*, *Padou v. District of Columbia Alcoholic Beverage Control Bd.*, 70 A.3d 208, 212 (D.C. 2013) ("Alleged harms shared in substantially equal measure by all or a large class of citizens are called generalized grievances and do not warrant exercise of jurisdiction.") (internal quotation marks omitted). We reach the opposite conclusion, however, with respect to Aeon's claim that it would be unlawful under D.C. Code § 47-104 (2012 Repl.) or other general principles of law for the District to use tax proceeds or other public funds to make payments on behalf of delinquent

property owners.[4]   Such complaints about the legality of public expenditures, which could equally be brought by any taxpayer, are prototypical generalized grievances.  *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573-75 (1992). We therefore do not address Aeon's general challenge to the legality of the District's use of public funds to make refund payments that exceed the redemption payments made by delinquent property owners.[5]

Aeon's remaining claims are "arguably within the zone of interests to be protected or regulated by the statute . . . in question."  *Lee v. District of Columbia Bd. of Appeals & Review*, 423 A.2d 210, 216 (D.C. 1980).  The provisions of the tax-sale statutes and regulations that Aeon relies upon are directed at determining

---

[4]  Section 47-104 provides:

> It shall not be lawful for the District authorities, or any person charged with the disbursements of money in the District, to divert from its legitimate object any money levied or collected as taxes from the people of the District.  Any person who shall violate the provisions of this section shall be deemed guilty of a misdemeanor in office, and shall be dismissed therefore.

[5]  We note, however, that the District is expressly authorized not only to make redemption-refund payments to tax-sale purchasers, D.C. Code § 47-1361 (d), but also to use public funds to protect the interests of delinquent property owners in the redemption process, D.C. Code § 47-1366 (District may cancel tax sale, to prevent injustice to delinquent property owner, but must pay redemption amount to tax-sale purchaser).

whether a property has been redeemed and, if so, when it was redeemed. Those provisions directly implicate Aeon's rights and interests, because they determine (a) whether Aeon still has an interest in properties that it purchased at tax sales and (b) what the amount of Aeon's redemption refunds should be. This close connection between Aeon's interests and the provisions that it relies upon is more than sufficient to meet the zone-of-interest requirement. *See generally, e.g.*, *D.C. Library Renaissance Project/West End Library Advisory Grp. v. District of Columbia Zoning Comm'n*, 73 A.3d 107, 115 (D.C. 2013) ("The zone-of-interests requirement is not especially demanding, . . . . [T]he benefit of any doubt goes to the plaintiff.") (internal quotation marks and citations omitted).

Finally, Aeon is asserting its own rights: to retain its interest in properties unless they have properly been redeemed and to collect a refund that is properly calculated. We therefore hold that, with the one exception previously noted, Aeon has standing to raise its claims.

**D.**

Fourth, the District argues that the doctrine of caveat emptor bars Aeon from challenging redemption based on errors in the District's tax-assessment and

tax-collection practices. We disagree.

Under the doctrine of caveat emptor, a tax-sale purchaser "assumes the risks involved" with purchasing a tax-sale property, and has "no remedy against the taxing authorities" beyond the remedies provided by the tax-sale statutes. *McCulloch v. District of Columbia*, 685 A.2d 399, 402 (D.C. 1996) (internal quotation marks omitted). That doctrine poses no obstacle to Aeon's claims. Aeon raises two main issues: whether the properties in these cases have been redeemed and if so on what date redemption occurred. The resolution of those issues, in turn, directly affects the amount of the refunds owed to Aeon because those refund amounts include interest through the date of redemption but not thereafter. D.C. Code §§ 47-1361 (d), -1380 (c)(1); 9 DCMR § 316.6 (d). Thus, the arguments Aeon raises go directly to a specific entitlement under the tax-sale statutes: payment of a redemption refund in the correct amount. We therefore conclude that Aeon's arguments are not barred by the doctrine of caveat emptor. *Cf. Rupsha 2007, LLC v. Kellum*, 32 A.3d 402, 411 n.16 (D.C. 2011) (doctrine of caveat emptor did not bar tax-sale purchaser's claim that District was required to cancel tax sale of property that had been sold in error, and to reimburse tax-sale purchaser accordingly; tax purchaser was "seeking what it is entitled to under the [tax-sale]

statute").[6]

**E.**

Fifth, we address a question that helps to determine the scope of our inquiry: whether the current dispute involves only the interests of Aeon and the District, or whether instead the interests of the delinquent property owners remain at issue. We conclude that the interests of the delinquent property owners are no longer at issue in these cases.

Aeon originally named the delinquent property owners as defendants in the actions to foreclose redemption, but the reviewing court subsequently granted Aeon's unopposed motion to dismiss the delinquent property owners from the actions. In its prayer for relief on appeal, Aeon asks this court to reverse and remand, for the tax sales to be cancelled or set aside, and for the District to pay

---

[6] More generally, the caveat-emptor cases cited by the District were decided under an older version of the tax-sale statutes. *Rupsha*, 32 A.3d at 411 n.16. We stated in *Rupsha* that "[t]he current statutory provisions preclude applying the common law rule of caveat emptor." *Id.* *See also* D.C. Code § 47-1384 ("Notwithstanding any other law, the provisions of this chapter shall be liberally construed as remedial legislation to encourage the foreclosure of the right of redemption by suits in Superior Court and for the decreeing of marketable titles to real property sold by the Mayor.").

Aeon "all amounts due for redemption through the date of cancellation." For its part, the District acknowledges that if the judgments are reversed, the issue on remand will involve a determination of the amount of additional interest owed to Aeon, which the District must pay. We thus treat the parties as having agreed that further proceedings in this case will not imperil the delinquent property owners' title to the underlying properties or impose further financial burdens on the delinquent property owners. We view the parties' agreement as appropriate in the circumstances of this case. *See* D.C. Code § 47-1371 (b)(3) (if plaintiff in action to foreclose right of redemption does not name property owner, rights of property owner "shall not be affected by the action"); *cf. Rupsha*, 32 A.3d at 411-13 (where District's administrative error caused property to be sold at tax sale in error, District was required to cancel tax sale and make appropriate payment to tax-sale purchaser, to prevent injustice). In particular, we give weight to the substantial authority supporting the principle that, in the absence of bad faith, an error by the taxing authority does not prevent the redemption of property. *See generally, e.g.*, C.S. Petrinelis, Annotation, *Effect of Certificate, Statement (or Refusal Thereof), or Error by Tax Collector or Other Public Officer Regarding Unpaid Taxes or Assessments Against Specific Property*, 21 A.L.R.2d 1273, 1280 (1952) (noting "almost universal rule" that "the good faith effort of a property owner to pay taxes, frustrated by . . . error . . . of the public officer required to accept payment and give

information as to the status of delinquent taxes[] is equivalent to payment, at least to the extent that it will discharge tax liens subsequently declared against the land[] and effectually bar sales for nonpayment of taxes") (citing cases); 85 *C.J.S. Taxation* § 1460, at 392 (2010) ("A redemptioner, who in good faith does all that is required by a public officer, is entitled in equity to the full benefit of a redemption even if the taxing authority made a mistake informing the redemptioner of the requirements."); 16 Eugene McQuillin, *Municipal Corporations* § 44-218, at 957 (3d rev. ed. 2013) ("In some circumstances, the right of redemption is not defeated where there has been a bona fide attempt to redeem which is defective through mistake of the tax officers.").[7]

## III.

We now turn to the merits of Aeon's appeals.  Aeon argues that under the

---

[7] At one point in its opening brief, Aeon states in passing that "all parties to the foreclosure cases . . . should be reinstated as defendants and Aeon permitted to seek foreclosure on the properties."  That statement is inconsistent with Aeon's prayer for relief, which seeks only cancellation or set aside of the tax sales.  Nor does Aeon attempt to explain why reinstatement of previously dismissed parties would be appropriate even though Aeon moved to dismiss those parties and did not subsequently move to reinstate them during the extensive proceedings in the trial court.  We therefore conclude that reinstatement of the previously dismissed parties would not be appropriate.  *Cf., e.g.*, *Northeast Drilling, Inc. v. Inner Space Servs., Inc.*, 243 F.3d 25, 36-37 (1st Cir. 2001) (upholding trial court's denial of belated motion to add party).

tax-sale statutes and regulations a property is not redeemed unless the delinquent-property owner itself makes the payment required to redeem the property, in an amount that is correct at the time of payment, and that the District cannot waive that requirement. Aeon further contends that the required payments have not yet been made, the properties at issue have not yet redeemed, and statutory interest is still accruing. For its part, the District argues that it can waive interest and penalties owed by delinquent property owners; that the properties at issue were properly redeemed; and that the trial court ordered redemption refunds to Aeon in the proper amounts. We hold that remand is necessary to determine the proper dates of redemption.

### A.

"The proper construction of a statute raises a question of law." *Washington v. District of Columbia Dep't of Pub. Works*, 954 A.2d 945, 948 (D.C. 2008). Although this court generally resolves legal questions de novo, *see Providence Hosp. v. District of Columbia Dep't of Emp't Servs.*, 855 A.2d 1108, 1111 (D.C. 2004), the court ordinarily accords deference to an agency's interpretation of a statute that the agency administers, unless the interpretation is "unreasonable or is inconsistent with the statutory language or purpose." *District of Columbia Dep't of*

*Env't v. East Capitol Exxon*, 64 A.3d 878, 880-81 (D.C. 2013) (internal quotation marks omitted). Moreover, this "court generally defers to an agency's interpretation of its own regulations unless that interpretation is plainly erroneous or inconsistent with the regulations." *District of Columbia Office of Tax & Revenue v. BAE Sys. Enter. Sys.*, 56 A.3d 477, 481 (D.C. 2012) (internal quotation marks omitted).

**B.**

We first address the question whether the District is permitted to waive interest and penalties owed by a delinquent property owner. We hold that such waivers are permissible.

D.C. Code § 47-811.04 (1) (2012 Repl.) permits the District to waive "interest or penalties[] on unpaid taxes levied under this chapter." "[T]his chapter" refers to Chapter 8 of Title 47, which deals with real-property taxes. *See* D.C. Code §§ 47-801 to -895.35 (2012 Repl.). By its terms, § 47-811.04 seems applicable to the interest and penalties on the unpaid real-property taxes of delinquent property owners whose properties have been subject to tax sale, because the unpaid property taxes at issue are levied under Chapter 8 of Title 47. Aeon

argues, however, that the provision does not apply to interest that accrues after a tax sale has occurred, because such interest accrues under the tax-sale provisions of Chapter 13A of Title 47.[8]  We disagree with Aeon's reading of the waiver provision, because that provision requires that the unpaid *taxes* be *levied* under Chapter 8, not that the waived *interest and penalties accrue* under Chapter 8.[9]

Aeon also argues that the waiver provision does not permit the District to reduce the amounts owed by the delinquent property owners in these cases.  In support of that argument, Aeon points out that a delinquent property owner's payments must be applied in the following order:  first costs; then penalties; then interest; and finally the original amount of unpaid taxes on the property.  D.C. Code § 47-1331 (c).  It follows, according to Aeon, that the unpaid portion of the delinquent property owner's outstanding liability must consist of unpaid taxes,

---

[8]  As previously discussed, see *supra* at pp. 4-8, Chapter 13A of Title 47 governs the tax-sale process in the District of Columbia.  The interest and penalties that accrue during that process are specified in D.C. Code §§ 47-1334, -1348 (b), -1361 (a), and -1377.

[9]  In these cases, the District has not contended that a waiver of interest granted after a tax sale can directly decrease the amount of the tax-sale purchaser's redemption refund.  We thus have no occasion to consider that issue.

rather than interest.[10] Because the waiver provision does not authorize the waiver of taxes, Aeon concludes, the waiver provision cannot serve as a basis for reducing the obligations of the delinquent property owners in these cases. We are not persuaded by this argument. We see no reason (and Aeon has suggested no reason) why the District could not waive interest that has already been paid and then apply the prior payment to the delinquent property owner's outstanding tax liability.[11]

---

[10] This step in Aeon's reasoning is flawed. For example, consider a case in which a delinquent property owner had paid all of the taxes, interest, and penalties owed to the District in connection with a tax sale, but had not yet paid the tax-sale purchaser the expenses required under D.C. Code § 47-1377. During the interval before payment of the expenses, additional interest would accrue. D.C Code § 47-1361 (a)(6); 9 DCMR § 316.6 (d) (interest runs until date of redemption). In such a case, the unpaid portion of the delinquent property owner's liability would not consist of unpaid taxes.

[11] In its brief on appeal, Aeon argues that the tax-sale statute requires that only the delinquent property owner or "other person who has an interest in the real property" may make payments to redeem a property. D.C. Code § 47-1360. At oral argument, Aeon appeared to retreat from that argument, at least to some degree, by conceding that third parties could make payments towards redemption on behalf of delinquent property owners. In any event, the reviewing court and the magistrate judge did not analyze these cases as involving payments by the District on behalf of delinquent property owners, and the District did not rely on such a theory in its briefs in this court. We therefore need not and do not address the question whether the District can cause properties to redeem by making payments to itself on behalf of delinquent property owners. *See generally, e.g.*, 16 Eugene McQuillin, *Municipal Corporations* § 44-214, at 944-46 (3d rev. ed. 2013) (discussing question of who may make redemption payments).

Aeon also suggests that waiver of interest and penalties is impermissible because the tax-sale statute provides only one solution if the District mistakenly treats a property as redeemed: cancellation of the tax sale under D.C. Code § 47-1366, with appropriate compensation to the tax-sale purchaser as required under that provision. We disagree. Although cancellation of the tax sale is certainly one option open to the District in such circumstances, nothing in the tax-sale statutes suggests that the option of cancellation is intended to be the sole remedy, to the exclusion of options authorized by other provisions of law. *Cf. Fawncrest Assocs., Inc. v. District of Columbia*, 727 A.2d 892, 893-94 (D.C. 1999) (rejecting argument that provision under prior tax-sale statute permitting District to retain its lien on delinquent property was "the exclusive way by which the District may acquire property subject to a tax lien").

## C.

We now turn to the central issues in these appeals: whether and, if so, when the properties at issue in this case were redeemed. Although we adopt a framework for resolving those issues, a remand is necessary to apply that framework to the cases before us.

The D.C. Code states the prerequisites for redemption:

> (a) To redeem the real property, the person redeeming shall pay to the [District] . . . the following: (1) . . . [T]he amount paid by the purchaser for the real property exclusive of surplus, with interest thereon; . . . (4) All other taxes, interest, and penalties paid by a purchaser on behalf of the real property, with the interest that would have been owing if the purchaser had not paid the taxes . . .; (5) All other taxes to bring the real property current; and (6) . . . [Unless a release is obtained from the tax-sale purchaser,] all [legal expenses and attorneys' fees] for which the purchaser is entitled to reimbursement under § 47-1377; . . . .

D.C. Code § 47-1361 (a).

The tax-sale regulations further provide that, once a tax-sale purchaser files an action to foreclose redemption, a property will qualify for redemption only if the delinquent property owner has "pa[id] in full . . . [a]ll taxes, assessments, fees, costs and expenses levied by a Taxing Agency," as well as certain other expenses of the tax-sale purchaser. 9 DCMR § 316.5 (a).[12] *See also* 9 DCMR § 316.12 (g) (defining date of redemption as "earlier of the date payment of all taxes,

---

[12] Different regulations apply when no action to foreclose redemption has been filed. *See* 9 DCMR § 316.3. In each of the cases before us, redemption occurred after Aeon filed an action to foreclose redemption. Our holding is therefore limited to cases where the tax-sale purchaser files an action to foreclose redemption.

assessments, penalties, interest, fees and costs has been posted to the applicable billing system, or the date owner provides [the Office of Tax and Revenue] with copies of the certified check and paid bank, or applicable agency, receipts confirming payment in full of all taxes, assessments, fees and costs").

Relying on these provisions, Aeon argues that a property cannot be treated as redeemed until all of the required payments have been made, in the proper amount. According to Aeon, the reviewing court overlooked this principle, by treating properties as redeemed even though, because of errors by the District in calculating the redemption amount, the proper redemption amount had not been paid. Moreover, Aeon's argument continues, because interest continues to accrue until the date that all required payments have been made, the reviewing court's erroneous determinations of the dates of redemption led to corresponding errors in calculating redemption amounts and thus the refund amounts owed to Aeon. Our analysis differs from Aeon's in significant respects.

It is true that D.C. Code § 47-1361 (a) could reasonably be read to make payment in the correct amount a prerequisite to a proper determination that a property has been redeemed. That provision, however, does not explicitly address what should happen if the District erroneously calculates the amount due, accepts

payment from the delinquent property owner, and declares a property redeemed. As we have previously noted, there is substantial authority that in such circumstances the property is properly viewed as having been redeemed. See *supra* at pp. 22-23. With respect to most of the payments a delinquent property owner is required to make, the regulation specifying the requirements for redemption is consistent with such an approach. Specifically, the regulation ties redemption to payment in the amount "levied by a Taxing Agency," not to payment in the correct amount. 9 DCMR § 316.5 (a). The regulation defining "[d]ate of [r]edemption" is not quite as clear on the point, but does focus on the status of the District's billing system, as opposed to whether the amount paid was equal to the amount that the District in fact ought to have billed under the tax-sale statute. 9 DCMR § 316.12 (g). In light of the deference owed to the District with respect to the interpretation of the pertinent statutes and regulations, these considerations support a conclusion that, with respect to amounts that are "levied by the Taxing Agency," a property can be redeemed if the District determines, even in error, that such amounts have been paid in full.

The analysis might be somewhat different, however, with respect to the reimbursable expenses of the tax-sale purchaser. Those expenses, which are specified in D.C. Code § 47-1377 (a), can include both (a) a $300 fee relating to

expenses incurred before the filing of an action to foreclose redemption and (b) a variety of expenses, including reasonable attorney's fees, incurred after the filing of an action to foreclose redemption. Those expenses are not levied by the District and need not be paid to the District. D.C. Code § 47-1361 (a)(6) (delinquent taxpayer can pay these expenses either directly to tax-sale purchaser or to District). With respect to these expenses, moreover, the regulations relating to redemption do not explicitly focus on the District's understanding of the amounts due, as opposed to the amounts actually due. The present cases, however, do not involve errors as to the amount of reimbursable expenses under D.C. Code § 47-1377. We therefore need not decide how such errors might affect whether and if so when a property should be viewed as having been redeemed. Rather, for current purposes we assume that payment of the reimbursable expenses in the correct amount is a prerequisite to redemption.

Under the foregoing analysis the properties in these cases were redeemed if and when (a) the District concluded, whether correctly or incorrectly, that all amounts levied by it had been paid; and (b) the tax-sale purchasers' reimbursable expenses had been paid. We emphasize, however, that for a property to have been redeemed, both of these conditions must be met at the same time. For example, if the District erroneously concludes in March that all amounts levied with respect to

a given property have been paid, but reimbursable expenses have not been paid, the property has not redeemed. And if the reimbursable expenses are later paid in October, but the District by then is aware that amounts levied by it have not been paid, the property still has not redeemed in October. Rather, the property would redeem only if and when, at the same time, (a) the District concluded that all amounts levied had been paid and (b) the reimbursable expenses in fact had been paid.

We also emphasize a second point that follows from the first: the power of the District to waive payment does not retroactively redeem property. For example, consider a case in which a delinquent property owner in January pays all but $50 of the amount levied on a property, and the District in May decides to waive the remaining $50. On a proper understanding, the property does not retroactively become redeemed in January. Moreover, in that scenario, statutory interest continues to run after January. Thus, the District's decision in May to waive the remaining $50 would not by itself suffice to properly redeem the property because an additional payment (or waiver) would be needed to satisfy the

additional interest that accrued between January and May.[13]

**D.**

Although we have already addressed a number of the arguments raised by the parties, we have not yet addressed several arguments that, if accepted, might call for an analysis different from that just described. We do not find those arguments persuasive.

**1.**

The District at one point states that the tax-sale statutes and regulations should be read to permit the District to treat a property as redeemed on the date that monies owed to the District (taxes, interest, penalties, and fees) have been paid, even if the tax-sale purchaser's reimbursable expenses have not yet been paid.[14] We disagree.

---

[13] If the District made a good-faith error in calculating the amount due in order to redeem the property, the property might properly be treated as having been redeemed despite that error. See *supra* at pp. 31-32.

[14] Although the District at one point states that a property is redeemed once the owner pays the District, the District also now acknowledges that the tax-sale purchaser is entitled to the interest that accrues during any delay between such payment to the District and the payment of reimbursable expenses to the tax-sale

(continued . . .)

The plain language of D.C. Code § 47-1361 (a)(6) forecloses the District's contention. That provision requires, as a condition of redemption, that the tax-sale purchaser's reimbursable expenses under D.C. Code § 47-1377 have been paid. Thus, if those expenses have not yet been paid on a given date, the property cannot properly be viewed as having been redeemed on that date.[15]

The tax-sale regulations largely point in the same direction. First, for redemptions that occur before the filing of an action to foreclose redemption, the regulations explicitly state that redemption does not occur until reimbursable expenses have been paid. *See* 9 DCMR § 316.2 (a)(5) ("Redemption does not

---

(. . . continued)

purchaser. These two positions are not logically compatible, because if a property were redeemed on the date the District was paid, then interest would not accrue during the period from the date of redemption to the date the reimbursable expenses were paid. *See* D.C. Code § 47-1361 (a); 9 DCMR § 316.6 (d) (statutory interest runs until date of redemption). For the reasons stated in text, we conclude that a property is not properly viewed as redeemed until the reimbursable expenses have been paid. Moreover, as we have already explained, see *supra* at pp. 28-34, a property does not necessarily redeem on the date of the payment of reimbursable expenses, but rather only redeems if and when, in addition, all of the interest accruing up to the date of redemption is either paid or waived. Like the trial court, see *infra* at pp. 40-41, the District does not appear to have taken account of this principle.

[15] We leave open the question whether the situation would be different if there were a good-faith error by the taxing authority with respect to the payment of the tax-sale purchaser's expenses. See *supra* at pp. 31-32.

occur until all taxes, assessments, penalties, interest, fees, and other costs have been made current, and the reimbursable Pre-Complaint Legal Expenses have been satisfied in full."). Second, for redemptions that occur after the filing of an action to foreclose redemption, the regulations do not state that redemption does not occur until payment of reimbursable expenses. But the regulations do make payment of reimbursable expenses a prerequisite to redemption. *See* 9 DCMR § 316.5 (a)(2), (a)(4). Third, the general definition of "Redeem" indicates that redeeming a property requires payment of the reimbursable expenses. *See* 9 DCMR § 316.12 (p). These regulatory provisions provide further support for the conclusion that a property is not redeemed until payment of the reimbursable expenses.[16]

The District argues, however, that it would be "unreasonable" and "absurd" to require payment of the reimbursable expenses before the date of redemption. We are not persuaded by the District's argument.

---

[16] The general definition of "Date of Redemption" arguably points in the other direction, because it indicates that redemption occurs upon payment of "taxes, assessments, penalties, interest, fees and costs" or "taxes, assessments, fees and costs," and makes no specific reference to reimbursable expenses. 9 DCMR § 316.12 (g). Because this provision is contrary to both plain statutory text and the language of other regulations, we cannot give it weight on this issue.

It is true that requiring payment of reimbursable expenses before the date of redemption adds some complexity to the redemption process. That added complexity, however, does not rise anywhere near the level of an absurdity that would trump plain statutory and regulatory language. Properly applied, the tax-sale statutes provide the District and delinquent property owners with numerous ways to cope with the added complexity. First, as long as the District makes the process clear, delinquent taxpayers will understand that a property will not be redeemed, and interest will continue to accrue on the full amount of the tax-sale purchase price (less any surplus), until the reimbursable expenses have been paid. Second, a delinquent property owner who wishes to avoid uncertainty can seek a certificate from the tax-sale purchaser indicating payment of the reimbursable expenses.[17] *See* D.C. Code § 47-1361 (a)(6). Third, if a dispute arises about the redemption amount after an action to foreclose redemption has been filed, the court will resolve the matter. *See* D.C. Code § 47-1362 (a). Finally, the District has the authority to waive interest and penalties, see *supra* at pp. 25-28. As the District acknowledges, exercise of that authority can in some

---

[17] In theory, a tax-sale purchaser could inflate the amount of interest owed by unreasonably or in bad faith refusing to provide such a certificate to a delinquent taxpayer who had in fact proffered full payment of the reasonable reimbursable expenses. We have no occasion to address the question whether, if such a showing were made, the date of redemption should be measured as against the date on which adequate payment was proffered, rather than on the date the trial court resolves the dispute as to the proper amount of the reimbursable expenses.

circumstances eliminate the need to delay redemption until the District can collect additional interest amounts from the delinquent property owner.

**2.**

For its part, Aeon objects to the idea that a property can be treated as redeemed when, due to an error by the District, the District fails to collect the amount required by law as a condition precedent to redemption. According to Aeon, such an approach means that a property is redeemed whenever the District says that it is redeemed. It is an exaggeration to say that giving legal effect to good-faith errors is equivalent to permitting the District to arbitrarily and unilaterally determine whether and when a property has redeemed. Aeon has not argued in these appeals that either the District or the delinquent property owners acted in bad faith. We therefore do not address the issues that would be raised in a case in which it was alleged and demonstrated that either the District or the delinquent property owners acted in bad faith. See *supra* at pp. 22-23 (citing authorities holding that, where delinquent property owner acted in good faith, property is treated as redeemed even if prerequisites to redemption were not met

due to error by taxing authority).[18]

Further, Aeon's preferred approach presents serious problems of its own. On Aeon's view, any error, no matter how small, in determining or collecting the proper amount required for redemption of a property would prevent the property from being redeemed, apparently for however long it took for the error to be discovered and rectified. During that period, the statutory rate of interest of 1.5% a month would continue to accrue. D.C. Code § 47-1334. As Aeon emphasizes, moreover, that interest would be calculated based on the full amount of the original tax liability, not on the amount of tax liability that remained unpaid at any given time. D.C. Code § 47-1361 (a)(1). Even small errors could thus create large interest liabilities for delinquent property owners or the District.

In sum, we conclude that the properties in these cases were redeemed if and when both of the following were true at the same time: (a) the District concluded,

---

[18] Once there is a dispute regarding redemption, the District may not accept a payment for redemption unless the court has fixed the amount necessary for redemption and that order has been filed with the Mayor. D.C. Code § 47-1362 (c). It is unclear whether this provision was followed in these cases, but Aeon has not raised a claim that the provision was violated, and we therefore do not address that issue. We do note that this provision would seem to decrease the risk that properties will be redeemed by the District's acceptance of payment in an incorrect amount.

whether correctly or incorrectly, that all amounts levied by it had been paid; and (b) the tax-sale purchasers' reimbursable expenses had been paid.

**E.**

The trial court adopted a seemingly similar test for determining when properties have been redeemed, stating that redemption occurs "whenever there is a zero tax balance (or a credit) and all other payments required for redemption under [D.C. Code §] 47-1361 (a) have occurred." The trial court held, however, that Aeon generally lacked the right to challenge the calculation of the date of redemption if that challenge rested on complaints about the District's tax-assessment and tax-collection practices, such as the District's decision to treat properties as redeemed before payment of the tax-sale purchasers' expenses. As we have explained, however, see *supra* at pp. 16-19, we conclude that Aeon does have standing to challenge the calculation of the redemption date, because such a challenge could affect the amount of the refunds to which Aeon is statutorily entitled. Moreover, perhaps because of its standing ruling, the trial court does not appear to have focused in the cases before us on the requirement that both conditions for redemption be met at the same time.

Based on the record currently before us, it is not clear what the proper redemption dates, and thus the proper redemption amounts, should be in the *Broadwater* and *Culbertson* cases. We therefore remand to the trial court to determine the applicable redemption date and redemption amount in each case.[19]

## IV.

In its cross-appeals, the District argues that the Superior Court erred by ordering the District to pay redemption refunds before dismissal of the actions to foreclose redemption. We agree.

By regulation, if an action to foreclose redemption has been filed, tax-sale purchasers seeking refunds must provide the District with a "[c]opy of the praecipe that dismisses the foreclosure action and/or [a] copy of the Certificate of Cancellation that cancels the Certificate of Sale." 9 DCMR § 316.6 (a)(2). This requirement is identified as a "prerequisite[]" for collecting a refund, and the regulation further notes that submission of the required documentation is necessary

---

[19] We note several other provisions that are potentially relevant to determining dates of redemption and redemption amounts. *See* D.C. Code § 47-1362 (a) (trial court can issue order fixing amount necessary for redemption); 9 DCMR § 316.5 (f) (where trial court issues order fixing redemption amount, property is redeemed when amount appearing on order is satisfied in full).

to "begin the processing of a Redemption Refund." 9 DCMR § 316.6 (a). Unless it is invalid or inapplicable, this regulation appears to condition the District's obligation to pay a refund on the dismissal of the corresponding action to foreclose redemption. Aeon raises two principal arguments in support of the contrary conclusion, but we do not find those arguments persuasive.

**A.**

First, Aeon contends that the regulation at issue does not expressly require dismissal of the action to foreclose redemption, but rather simply requires the tax-sale purchaser to file "a copy of [the praecipe] it would file" if and when it receives its redemption refund. As we have previously noted, however, this court "generally defers to an agency's interpretation of its own regulations unless that interpretation is plainly erroneous or inconsistent with the regulations." *District of Columbia Office of Tax & Revenue*, 56 A.3d at 481 (internal quotation marks omitted). We uphold the District's interpretation of its regulation.

In challenging the District's interpretation, Aeon focuses on the use of the present tense in the word "dismisses." According to Aeon, if the regulation had been intended to require the actual dismissal of the action to foreclose redemption,

the past tense -- "dismissed" -- would have been used. We do not agree. Under the Superior Court Rules of Civil Procedure, a "praecipe" of dismissal, filed with the consent of all parties, operates to dismiss an action without further order of the court. Super. Ct. Civ. R. 12-I (a), 41 (a)(1)(ii) (2013).[20] It therefore is quite natural to refer to a "praecipe that dismisses" an action. In contrast, Aeon's proposed reading of the regulation is linguistically untenable. When an action to foreclose redemption is still pending, and the tax-sale purchaser has not moved to voluntarily dismiss that action, the party cannot reasonably be said to have filed a "praecipe that dismisses the foreclosure action." That is so even if the tax-sale purchaser has submitted to the District an unfiled pleading that the tax-sale purchaser says that it would file if the District paid the refund.

Aeon's proposed interpretation of the regulation has another serious flaw: it is difficult to understand what meaningful purpose the regulation would serve if it

---

[20] Aeon accurately observes that in some circumstances dismissal cannot be obtained by means of a praecipe. That observation might raise interesting issues in a case where an action to foreclose redemption had been dismissed by means other than a praecipe and the District relied on that fact to refuse to pay a refund. This case does not involve such circumstances, however. Nor does this case present the issues that might arise if the District refused to pay a redemption refund to a tax-sale purchaser who (a) had surrendered the tax-sale certificate and unsuccessfully sought dismissal of the action to foreclose redemption, or (b) sought a refund after an action to foreclose redemption resulted in a final order, no longer subject to review on appeal, setting aside or cancelling the tax sale pursuant to D.C. Code §§ 47-1366, -1380.

required only the submission of a copy of a pleading that might or might not be filed in court at some later time. In contrast, although one could reasonably debate the advantages and disadvantages of delaying the District's obligation to pay a redemption refund until the underlying action to foreclose redemption has been resolved, the District's reading at least gives the regulation an understandable function.

Aeon suggests that the District's interpretation is not entitled to deference because the District had not previously insisted that tax-sale purchasers dismiss their actions to foreclose redemption before the District would pay refunds. The District does not dispute on appeal that it has not generally been requiring dismissal before paying refunds, but the District does claim that enforcement of that requirement against Aeon in particular was justified because Aeon's litigation strategy differed from the approach taken by other tax-sale purchasers. We need not resolve these issues, however, because we would uphold the District's interpretation of its regulation even if that interpretation is not entitled to deference.[21]

---

[21] Relatedly, Aeon argues that the "refund protocol" followed by the District in 2008 did not require dismissal before refund. The "refund protocol," which appears to be a checklist contained in an e-mail from a District official to Aeon, does not have the force of law and does not bind the District. *See, e.g.*,

(continued . . .)

**B.**

Second, Aeon argues that the regulation contradicts D.C. Code § 47-1361 (d), which does not refer to praecipes of dismissal but rather provides that the tax-sale purchaser must "surrender the certificate of sale" before obtaining a refund. In response, the District contends that surrendering the certificate of sale is the practical equivalent of dismissing the action to foreclose redemption, because surrender of the certificate of sale precludes the tax-sale purchaser from going forward with an action to foreclose redemption. *See* D.C. Code §§ 47-1370 (c)(1)(A), (c)(3) (requiring that complaint in action to foreclose redemption state date of issuance of certificate of sale and that certificate or copy thereof be attached to complaint). To the extent the regulation runs beyond the express terms of the statutory requirement, the District relies on its authority to "promulgate regulations to carry out the purposes" of the tax-sale provisions. D.C.

---

(. . . continued)
*Bio-Medical Applications of D.C. v. District of Columbia Bd. of Appeals & Review*, 829 A.2d 208, 215 (D.C. 2003). Finally, Aeon suggests in passing that it was "unconstitutional" for the District to single Aeon out for enforcement of the requirement that dismissal precede refund. Aeon's passing reference to a possible constitutional argument does not suffice to present that argument for our resolution on appeal. *See, e.g.*, *Bardoff v. United States*, 628 A.2d 86, 90 n.8 (D.C. 1993) (treating claim as abandoned, where appellant mentioned claim but did not provide supporting argument).

Code § 47-1335.

Aeon does not suggest a plausible alternative reading of the pertinent provisions, and we therefore accept the District's contention that a tax-sale purchaser who surrenders the certificate of sale can no longer go forward with an action to foreclose redemption. *See Schwartz v. City of Chicago*, 315 N.E.2d 215, 223 (Ill. App. Ct. 1974) (surrender of tax certificate would constitute abandonment of statutory and common-law rights as tax-sale purchaser); *cf. Robinson v. Bailey*, 198 N.E. 217, 219 (Ill. 1935) (tax-sale purchaser may not both accept redemption refund and "still lay claim to the real estate redeemed from such judgment"); *Petak v. City of Paterson*, 677 A.2d 244, 246-49 (N.J. Super. Ct. App. Div. 1996) (city erred by paying redemption refund to tax-sale purchaser without requiring surrender of original tax-sale certificates).

So understood, the pertinent provisions provide tax-sale purchasers in Aeon's situation with a choice. If tax-sale purchasers decide to accept the trial court's determination that a property has been redeemed and its calculation of the redemption amount, they may forego further litigation of those issues and obtain a refund in the amount previously determined by the court. Alternatively, if they believe that the property has not been redeemed or that the trial court erroneously

calculated the redemption amount, they may continue to litigate, wait for a final determination of those issues, and then seek a refund. Aeon argues, however, that it is unfair to require tax-sale purchasers to elect between their right to prompt payment of a refund and their right to challenge in court the determination that a property has been properly redeemed. We do not find that argument persuasive.

In the absence of a plausible alternative interpretation of the provisions at issue, it is not clear how much weight Aeon's claim of unfairness could bear. *Cf. James Parreco & Son v. District of Columbia Rental Hous. Comm'n*, 567 A.2d 43, 49-50 (D.C. 1989) (adopting interpretation of statute despite acknowledgement that result might not be "fairest of them all"); *Jones v. State*, 119 S.W.3d 766, 784 (Tex. Crim. App. 2003) (en banc) ("Parties are often faced with difficult choices, but facing a tough dilemma does not create a claim . . . ."). In any event, other jurisdictions appear to give tax-sale purchasers the same choice. See cases cited *supra* at 46; *see also, e.g.*, *Heartwood 88, Inc. v. Montgomery Cnty.*, 846 A.2d 1096, 1104 (Md. Ct. Spec. App. 2004) (redemption refunds "are paid by the tax collector to the tax sale purchaser in exchange for the surrender of the certificate of sale") (internal quotation marks omitted). We see no basis to conclude that the redemption process established by the Council is so unfairly one-sided that we are required to reject the District's interpretation of the pertinent provisions.

In sum, Aeon does not appear to have surrendered its certificates of sale and did not seek dismissal of its actions to foreclose redemption. Under the circumstances, the trial court erred in ordering the District to pay refunds to Aeon.

## V.

For the foregoing reasons, we affirm the dismissal of the motions for review in *Wasef*. In *Broadwater* and *Culbertson*, we reverse and remand to the Superior Court for further proceedings.

*So ordered.*